CHARLES R. STUART, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89096. Promulgated November 15, 1938.

*Raymond R. Hails, Esq.*, and *A. L. Moreton, C. P. A.*, for the petitioner.
*Alva C. Baird, Esq.*, for the respondent.

### OPINION.

SMITH: In this proceeding the petitioner seeks the redetermination of a deficiency in income tax for 1934 of $756.33. The question in issue is whether the petitioner sustained a deductible loss of at least $12,621.06—the amount of the net income determined by the respondent resulting from the petitioner having, during 1934, turned over to the trustee for his bankrupt estate real and personal property which had cost him $76,800.

The facts have all been stipulated. They may be summarized as follows:

The petitioner is a resident of the City of Glendale, County of Los Angeles, California. He filed an income tax return for 1934 which shows as his total gross income $13,750 representing one-half of the salary which he received from Chas. R. Stuart, Inc. He claimed the deduction from gross income of a loss of $41,200. The return showed a net loss of $28,578.94. The deduction of the $41,200 was

disallowed by the respondent in the determination of the deficiency, and a net income of $12,621.06 determined.

The petitioner was a director and vice president of the Guaranty Building & Loan Association of Los Angeles from the date of its organization in 1921 to the time of the confessed defalcation of Gilbert H. Beesemyer in December 1930.

The petitioner also became a director of United States Guaranty Corporation at the time of its organization and continued to act as a director of that corporation at all times between the date of its organization and the time Bessemyer confessed his defalcation.

On or about December 15, 1930, there was filed in the Superior Court of the State of California, in and for the County of Los Angeles, an action entitled "W. H. Douglas v. Guaranty Building and Loan Association of Los Angeles, et al., No. 313–332." The petitioner was made a defendant in that action as a director of the Building & Loan Association. Thereafter, and on or about September 28, 1933, pursuant to stipulation, a judgment was entered against the petitioner and other defendants in that action in the amount of $7,661,793. The petitioner was insolvent at all times between the date of the judgment on September 28, 1933, and January 9, 1934, when a petition in voluntary bankruptcy was filed.

On April 29, 1931, Ernest U. Schroeter, as trustee in bankruptcy for the United States Guaranty Corporation, filed a suit in the Superior Court of the State of California, in and for the County of Los Angeles, No. 320–640, against Gilbert H. Beesemyer, petitioner, and the other directors of the United States Guaranty Corporation, praying for a judgment of $193,333.86. That action was never brought to trial but was dismissed as to petitioner on May 15, 1934.

During 1931 seven suits were instituted in the Municipal Court of the City of Los Angeles in which petitioner was named a defendant. All of the suits were based either upon petitioner's liability as a director or a stockholder in the Guaranty Building & Loan Association of Los Angeles or United States Guaranty Corporation. With the exception of one of the suits, in which judgment was rendered for the defendant for costs, the remaining suits are still pending and unadjudicated.

On January 9, 1934, the petitioner filed in the United States District Court for the Southern District of California a voluntary petition in bankruptcy, and was adjudicated a bankrupt. On February 19, 1934, Hiram E. Casey was appointed trustee in bankruptcy in the bankruptcy proceeding.

By virtue of his appointment as trustee, Hiram E. Casey acquired from the petitioner by operation of law and without other consid-

eration title to all of the property belonging to petitioner. Actual delivery of the property was made to the trustee by the petitioner during the month of February 1934. The assets turned over to the trustee were as follows:

| Item No. | Description of asset | Cost to petitioner |
|---|---|---|
| 1 | Certain real property located on Vine Street in Los Angeles, known as Leland tract, acquired Dec. 24, 1925, and Apr. 17, 1927 | $41,200 |
| 2 | 34 shares of the capital stock of Charles R. Stuart, Inc., a California corporation, evidenced by certificate No. 1 (acquired in 1933) | 850 |
| 3 | 317 shares of the capital stock of Harry E. Jones, Inc., evidenced by certificates Nos. 117 and 155 (acquired from 3/4/26 to 3/12/30) | 31,830 |
| 4 | 7 shares of the capital stock of Transamerica Corporation | 420 |
| 5 | Special life membership in Flintridge Country Club (acquired about 1921) | 1,000 |
| 6 | Northeasterly half of lot 35, and all of lot 36 of tract 7891, County of Los Angeles | 1,500 |

The total claims proven against petitioner's bankrupt estate were as follows:

| Claimant | Court and case No. | Amount of claim |
|---|---|---|
| A. N. Kemp, trustee in Equity for Guaranty Building & Loan Association of Los Angeles. | Superior 313–332 | $7,661,793.00 |
| Andrew J. Jenkins | Municipal 236–028 | 182.93 |
| Ernest U. Schroeter, as trustee in Bankruptcy for United States Guaranty Corporation. | Superior 320–640 | 193,333.86 |
| Anthony J. Jacobs | Municipal 238–857 | 977.92 |
| Saul S. and Ida Klein | Municipal 238–855 | 1,285.42 |
| Total | | 7,857,573.13 |

No dividends have been paid as yet to any of these claimants by the trustee.

In his income tax return for 1934 petitioner claimed no loss for any assets turned over to the trustee in bankruptcy except on the Leland Tract which was acquired by the petitioner on December 24, 1925, and April 17, 1927, at a cost of $41,200.

The petitioner has at all times made his income tax returns, including his return for 1934, on the cash receipts and disbursements basis.

Petitioner received his discharge in bankruptcy on June 4, 1934.

The petitioner sustained a loss in 1934 as the result of acting as a director of the Guaranty Building & Loan Association. The loss sustained, in the amount of at least $12,621.06, is a legal deduction from gross income.

The question presented by this proceeding is whether the petitioner sustained a loss in 1934 which is deductible from gross income; and, if so, the amount thereof. The respondent submits that petitioner was insolvent in 1933 and that he sustained no deductible loss when he turned his property over to the trustee in bankruptcy.

The reason for the disallowance by the respondent of the claimed deduction of $41,200 from the gross income of 1934 is as follows:

The loss on the sale of the Leland Tract has been disallowed in accordance with I. T. 2898, Cumulative Bulletin XIV-1, page 70, which states that a taxpayer may not deduct as a loss in computing his net income either for the year in which he was adjudicated a bankrupt or for the year in which he received a discharge in bankruptcy under the National Bankruptcy Act, the cost or other basis of the property turned over by him to the trustee in bankruptcy to be applied in payment of his indebtedness in accordance with the provisions of that Act.

The pertinent provisions of the Revenue Act of 1934 are as follows:

SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(e) Losses by Individuals.—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

(1) if incurred in trade or business; or

(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; or

(3) of property not connected with the trade or business, if the loss arises from fires, storms, shipwreck, or other casualty, or from theft. \* \* \*

Article 23 (e)-1 of Regulations 86 provides in material part as follows:

*Losses by individuals.*—Losses sustained by individual citizens or residents of the United States and not compensated for by insurance or otherwise are fully deductible if (a) incurred in the taxpayer's trade or business, or (b) incurred in any transaction entered into for profit, or (c) arising from fires, storms, shipwreck, or other casualty, or theft, \* \* \*

In general losses for which an amount may be deducted from gross income must be evidenced by closed and completed transactions, fixed by identifiable events, bona fide and actually sustained during the taxable period for which allowed. Substance and not mere form will govern in determining deductible losses. Full consideration must be given to any salvage value and to any insurance or other compensation received in determining the amount of losses actually sustained. \* \* \*

In his brief the respondent submits:

\* \* \* the petitioner's contentions [with respect to the claimed deduction of a loss of $41,200] are without merit because the facts clearly show that he made no payment on the judgment as such at any time and if the books of petitioner had been kept on the accrual system then the loss, if any, would have been deductible in 1933 when the judgment was entered against him. While it is true that by the transfer of his assets to the trustee in bankruptcy, the petitioner was forever divested of his said property, nevertheless he at the same time as a result of the whole proceedings, namely, his discharge in bankruptcy, was benefited by the cancellation of adjudicated indebtedness against him, which amounted to a sum that was many times more than the value of the property. \* \* \*

In article 43–2 of Regulations 86, promulgated under the provisions of the Revenue Act of 1934, it is stated:

* * * Judgments or other binding adjudications, such as decisions of referees and boards of review under workmen's compensation laws, on account of damages for patent infringement, personal injuries, or other cause, are deductible from gross income when the claim is so adjudicated or paid, unless taken under other methods of accounting which clearly reflect the correct deduction, less any amount of such damages as may have been compensated for by insurance or otherwise. * * *

The Board is of the opinion that there can be no question but that the petitioner sustained a loss in 1933 or 1934 greatly in excess of $12,621.06, the amount of the net income determined by the respondent. He clearly lost in either one year or the other all of his property which cost him $76,800.

The respondent makes no contention that the loss was not one sustained "in trade or business." We think that no such contention could validly be made. The judgment was obtained against the petitioner by reason of his having been a director and vice president of the Guaranty Building & Loan Association of Los Angeles. This was a business undertaking of the petitioner and the loss was one sustained in trade or business.

The respondent admits that if the petitioner had kept his books of account upon the accrual basis rather than upon the cash receipts and disbursements basis the loss sustained by the petitioner would have been a legal deduction from the gross income of 1933, the year in which a final judgment was obtained against him. Since the petitioner kept his books of account and made his tax returns upon the cash receipts and disbursements basis the loss was not "sustained" in 1933 within the meaning of the income tax acts. We do not believe that it was the intention of Congress to deprive taxpayers making their returns on a cash receipts and disbursements basis of losses which would be deductible in returns made on the accrual basis. The only difference in treatment countenanced by the income tax law is the year of deduction. The petitioner made his returns on a cash receipts and disbursements basis. His loss was sustained in 1934, the year in which he lost his property. Cf. *Sidney-Hill System of Health Building Co.*, 12 B. T. A. 548.

The contention of the respondent appears to be that since the petitioner went into bankruptcy in 1934 he is precluded from deducting the loss. His sole reliance is on I. T. 2898, *supra*, which was apparently written to cover this case. We are of the opinion that the bankruptcy proceeding has nothing to do with the deductibility of the loss.

In *Yoder* v. *Nauts*, 34 Fed. (2d) 450, it was held that, where an officer of a corporation guaranteed another against certain losses anticipated as possible in 1920 and this guaranty ripened into liquidated indebtedness in 1921, which was met by delivery of promissory notes, such losses became "business losses" to the taxpayer as and when the notes were paid.

In *John P. Dillon*, 9 B. T. A. 177, it was held that a payment made by a guarantor for relief from liability, past and future, under a guarantee contract constituted a deductible loss.

The Board has held that where a paymment was made in satisfaction of judgments obtained under mechanics' liens the payment was a legal deduction from gross income, *Leichner & Jordan Co.*, 4 B. T. A. 133; that where profits were surrendered in order to avoid a damage suit the amount thereof was likewise a legal deduction, *W. R. Hervey*, 25 B. T. A. 1282; also, that where a payment was made to settle a controversy over stock fraudulently issued the amount paid was a legal deduction, *North American Investment Co.*, 24 B. T. A. 419.

In O. D. 978, Cumulative Bulletin No. 5, p. 135, a taxpayer was allowed a deduction on account of payment of a judgment based upon his misrepresentations in a real estate deal. In O. D. 1091, Cumulative Bulletin No. 5, p. 139, it was held that an amount paid out in compromise of a judgment recovered in a suit against a taxpayer on account of dereliction and neglect of his duty while serving as a director of a bank was an allowable deduction. In I. T. 1853, Cumulative Bulletin II-2, p. 124, it was held that an amount paid in liquidation of a judgment recovered against the taxpayer for the recovery of secret profits arising from the purchase of certain property on behalf of a corporation formed by him and others was deductible from gross income.

In *In re Park's Estate* (C. C. A., 2d Cir.), 58 Fed. (2d) 965, it was held that an amount paid in to a bank by the president to prevent closing thereof because of the treasurer's defalcations was not deductible from the president's income. The court observed that the president "did not put in his $100,000 in additional money in settlement of any recognized legal liability so to do." It held that the amount was simply an additional investment in the shares of stock owned by the president. That case is distinguishable from the proceeding at bar, for here the petitioner had a legal liability arising from his being a director of the Guaranty Building & Loan Association of Los Angeles.

The Board is of the opinion that it was not the intention of Congress in the enactment of the Revenue Act of 1934, or of any other

revenue act, to disallow the deduction from gross income of losses arising from purely business transactions. We think it clear that if the petitioner in 1934 had sold the assets which he later turned in to the trustee in bankruptcy and paid the cash in compromise of his liability on the judgment, the amount paid would be a legal deduction from gross income. We can not see how the fact that he paid his property in to a trustee in bankruptcy bars him from the deduction of the loss actually sustained.

It will be noted above that the total claims proven against the petitioner's bankrupt estate included three claims as follows:

| Claimant | Court case No. | Amount of claim |
| --- | --- | --- |
| Andrew J. Jenkins | Municipal 236-028 | $182.93 |
| Anthony J. Jacobs | Municipal 238-857 | 977.92 |
| Saul S. and Ida Klein | Municipal 238-855 | 1,285.42 |
| Total | | 2,446.27 |

The stipulated facts do not show the nature of these proven claims. For aught shown to the contrary they may have been claims against the petitioner's bankrupt estate which were not incurred "in trade or business." It certainly can not be said that a taxpayer sustains a deductible loss in respect of claims proven against his bankrupt estate which were not incurred "in trade or business." The total of such claims was, however, in the instant proceeding, insignificant. The balance of the claims proven against the bankrupt's estate arose from transactions connected with the petitioner's trade or business. To the extent that the petitioner paid off such claims in the taxable year the amount is a legal deduction from gross income.

There may also be a question as to whether the petitioner would be in any event entitled to deduct from his gross income for 1934 the full amount of $76,800 representing the entire cost of all of the property turned in by him to the trustee in bankruptcy in that year. It is questionable whether his purchase of a special life membership in the Flintridge Country Club at a cost of $1,000 is an item of property which was purchased with the expectation of realizing a profit therefrom. It would appear that the investment was for the personal benefit of the petitioner. It may also be true that certain other items of property turned over to the trustee were not purchased with any intention of realizing a profit from them. But we are satisfied that the petitioner's investment of $31,830 in 317 shares of the capital stock of Harry E. Jones, Inc., and the investment of other amounts of money in personal property were made by the petitioner for the purpose of realizing a profit therefrom, and that the cost to the peti-

tioner of such items of property was much in excess of $12,621.06, the amount of the net income determined by the respondent in the determination of the deficiency. The petitioner is entitled to the deduction of a loss of $12,621.06. With the allowance of such deduction the petitioner had no net income for 1934.

Reviewed by the Board.

*Judgment of no deficiency will be entered.*