NORRIS BLOOMFIELD, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2864–67. Filed August 4, 1969.

---

*Stanley E. Jennings*, for the petitioner.
*Brice A. Tondre*, for the respondent.

OPINION

TANNENWALD, *Judge:* Respondent determined a deficiency in petitioner's income tax for the years 1960, 1961, and 1962 in the amounts of $1,739.88, $3,825.82, and $3,146.62, respectively. The issues for our determination are whether petitioner is entitled under section 165 [1] to deduct the claimed net worth of a sole proprietorship as a loss as a result of bankruptcy proceedings and whether petitioner is liable for all or one-half of the deficiency, since respondent issued checks in the amount of one-half the present deficiency to petitioner and to his former wife, as tentative carryback adjustments from 1963, when separate returns were filed, to 1960, 1961, and 1962, when joint returns were filed.

All of the facts are stipulated and are found accordingly.

Petitioner is an individual, who had his legal residence in Santee, Calif., at the time of filing the petition herein. Petitioner and his wife, Ruth Bloomfield, filed joint Federal income tax returns for the years 1960, 1961, and 1962 and separate returns for the year 1963 with the district director of internal revenue, Los Angeles, Calif. On June 10, 1963, Ruth was granted an interlocutory judgment of divorce from petitioner, which has since become final.

Petitioner owned and operated as a sole proprietorship a retail jewelry store and pawnbrokerage called the Mutual Jewelry & Loan Co. (hereinafter Mutual) in San Diego, Calif. During the period January 1 to May 20, 1963, Mutual sustained an operating loss of $955.48. On the latter date, petitioner filed a voluntary petition in bankruptcy pursuant to the provisions of chapters I through VII of the Bankruptcy Act, 11 U.S.C. secs. 1–112, under which petitioner was adjudicated a bankrupt. As of May 20, 1963, the balance sheet of Mutual, which maintained its books and records on the accrual method of accounting, reflected assets of $136,684.28 and liabilities and reserves of $62,975.77, leaving a net capital of $73,708.51. Subsequent to May 20, 1963, petitioner did not operate Mutual.

Pursuant to the bankruptcy proceeding, assets of Mutual were sold to a third party for $57,500. The sale was confirmed by the referee in

---

[1] All references are to the Internal Revenue Code of 1954, as amended.

bankruptcy on June 14, 1963, and by the U.S. District Court on December 13, 1963. The report and account of the trustee were filed on February 14, 1964, and the bankruptcy proceeding was concluded in that year. The report of the referee, dated May 19, 1964, showed liabilities allowed of $53,880.29 and net realization of assets of $70,948.21, of which $19,915.88 was shown to have been utilized for costs and expenses of liquidation, $2,750.41 for payment of taxes, and the balance of $48,281.92 in liquidation of claims of creditors.

Petitioner reported a loss of $71,788.99 on his separate return for 1963, which was computed as follows:

| | |
|---|---:|
| Wages | $2, 875. 00 |
| Loss of net worth of business | (73, 708. 51) |
| Business loss 1/1/63–5/20/63 | (955. 48) |
| | (71, 788. 99) |

Ruth reported a net operating loss of half the above amount, namely, $35,894.50, on her separate return for 1963.

As a result of the claimed net operating loss for 1963, petitioner and Ruth filed separate applications for tentative carryback refunds, in the aggregate amounts of $4,356.16 each, for the years 1960, 1961, and 1962, based upon the carryback by each of one-half the $71,788.99 loss. Respondent issued separate tentative refund checks to petitioner and Ruth in the amount requested, plus interest.

Respondent, upon audit of petitioner's 1963 return, disallowed the deduction of $73,708.51 reported as "loss of net worth of business in bankruptcy." This disallowance eliminated the net operating loss for 1963 reported by petitioner and Ruth, which had been carried back to 1960, 1961, and 1962. Accordingly, a joint statutory notice of deficiency was issued to petitioner and Ruth in the amount of $8,712.32, which equaled the total amount of the refunds paid separately to petitioner and Ruth.

Ruth defaulted with respect to the statutory notice of deficiency. As a result of this default, the entire deficiency was assessed against her and a notice of Federal tax lien was filed against her. To date, no part of the assessment has been collected from her.

Petitioner asserts that in 1963 he sustained a loss of the alleged net worth of his sole proprietorship in the amount of $73,708.51 (i.e., the excess of the alleged cost basis of the assets over the alleged amount of the unpaid liabilities of the business)[2] as a result of the bankruptcy

---

[2] We note that petitioner claims only *the excess* as a loss. Presumably this is because, as an accrual basis taxpayer, he had previously obtained a tax benefit through the deduction of his liabilities in earlier years. Compare *United States* v. *Skelly Oil Co.*, 394 U.S. 678 (1969).

proceedings, which he properly carried back under section 172 as a net operating loss deduction to the taxable years 1960, 1961, and 1962. Aside from any questions as to the measure or nature of any loss that may have occurred,[3] it is essential that petitioner be found entitled to utilize the carryback. It is to this question that we initially direct our attention.

The tax status of a trustee in bankruptcy and the allocation of rights and responsibilities between the trustee and the individual bankrupt present a series of knotty problems. Cf. *Nicholas* v. *United States*, 384 U.S. 678 (1966); *Segal* v. *Rochelle*, 382 U.S. 375 (1966); see Krause & Kapiloff, "Bankrupt Estate, Taxable Income and the Trustee in Bankruptcy," 34 Ford. L. Rev. 401 (1966). Neither the Internal Revenue Code nor the Federal Bankruptcy Act specifically deals with the tax aspects of a voluntary petition in bankruptcy under chapters I through VII of the Bankruptcy Act, 11 U.S.C. secs. 1–112.[4] Section 70(a) of the Bankruptcy Act, 11 U.S.C. sec. 110(a), does provide that title to the assets of the bankrupt vests in the trustee in bankruptcy as of the date of the filing of the petition.

In *Segal* v. *Rochelle*, *supra*, a case heavily relied upon by respondent and totally ignored by petitioner, the Supreme Court was confronted with the question whether the trustee in bankruptcy or the individual bankrupt was entitled to the benefit of the carryback of a net operating loss for the portion of the taxable year preceding the date of the filing of the petition in bankruptcy. The Court rejected the argument that the net operating loss was too inchoate to constitute "property" within the meaning of section 70(a)(5) of the Bankruptcy Act, 11 U.S.C. sec. 110(a)(5), because it did not become fixed until the end of the

[3] The balance sheet of petitioner's business at the time of the filing of the petition in bankruptcy on May 20, 1963, showed assets of $136,684.28, liabilities of $58,585.93, and reserves for liabilities of $4,389.84, on the basis of which petitioner calculated his claimed loss of net worth. The report of the referee in bankruptcy, dated May 19, 1964, showed allowable liabilities of only $53,880.29 and total net realization of $70,948.21. Respondent has not argued that petitioner has not satisfied his burden of proof as to the amount of the loss because of his failure to submit evidence that the $136,684.28 of assets shown on the balance sheet represented the actual cost of such assets, that the liabilities of $58,585.93 shown on the balance sheet were not in fact due and owing, or that the assets were used by the trustee in bankruptcy to satisfy personal, as distinguished from business, liabilities. Compare *Charles R. Stuart*, 38 B.T.A. 1147, 1153 (1938). Nor has respondent argued that 1963 was not the proper year for deduction of whatever loss may have been sustained on the ground that petitioner has not shown that the assets or proceeds thereof were in fact applied in discharge of his liabilities in that year. The total amount of loss utilized by the petitioner and his wife as claimed carryback was $47,980.31 as compared with $73,708.51 of balance sheet net worth. Based upon this reduced utilization of the claimed loss and the stipulation of facts, we consider that respondent has abandoned any such contentions based upon factual gaps in the record.

[4] We note that 11 U.S.C., secs. 668, 670, 795, 796, 920, 922, and 1079, provides that no income is realized and that the basis of the remaining property shall be reduced in connection with the discharge of indebtedness in proceedings under certain chapters of the Bankruptcy Act. See also secs. 108 and 1017, I.R.C. 1954, and secs. 1.61–12(b) and 1.1016–7, Income Tax Regs.

bankrupt's taxable year [5] and held that the right to the carryback belonged to the trustee. In so holding, the Court stated, 382 U.S. at 379–380:

The main thrust of § 70a(5) is to secure for creditors everything of value the bankrupt may possess in alienable or leviable form when he files his petition. To this end the term "property" has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed. [Citations omitted.] However, limitations on the term do grow out of other purposes of the Act; one purpose which is highly prominent and is relevant in this case is to leave the bankrupt free after the date of his petition to accumulate new wealth in the future. * * * Turning to the loss-carryback refund claim in this case, we believe it is sufficiently rooted in the prebankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start that it should be regarded as "property" under § 70a(5).

We think that *Segal* v. *Rochelle, supra,* requires the conclusion that petitioner is not entitled to the carryback of any loss.

Neither the filing of a petition in bankruptcy nor the bankruptcy proceedings themselves necessarily entitles the bankrupt to a loss deduction. *Frances M. Parkford,* 45 B.T.A. 461 (1941), affd. 133 F. 2d 249 (C.A. 9, 1943); *B. & L Farms Co.* v. *United States,* 238 F. Supp. 407 (S.D. Fla. 1964); see *Charles R. Stuart,* 38 B.T.A. 1147, 1151 (1938). Petitioner, recognizing the principle of the decided cases, claims that its applicability is limited to those situations where the liabilities satisfied by the use of assets are in excess of the cost basis of the assets and the bankrupt realizes no taxable income because he does not become solvent by reason of such satisfaction. Sec. 1.61–12(b), Income Tax Regs.; compare *Main Properties, Inc.,* 4 T. C. 364, 384–385 (1944); *Texas Gas Distributing Co.,* 3 T.C. 37, 61 (1944). Petitioner asserts that the principle is inapplicable where, as is the case herein, the reverse situation obtains, namely, the cost basis of the assets exceeds the liabilities. See fn. 3, *supra.* We find it unnecessary to decide whether the asserted distinction is correct. The fact is that the value of petitioner's assets was insufficient to permit payment of his liabilities. The decline in value below cost obviously developed in the prebankruptcy past, with the result that whatever loss was created thereby, including its attendant carryback potential, was "sufficiently rooted in the pre-bankruptcy past" and so "little entangled with the bankrupts' [petitioner's] ability to make an unencumbered fresh start" that it should be considered as passing to the trustee in bankruptcy. See *Segal* v. *Rochelle, supra.*[6]

---

[5] The institution or pendency of bankruptcy proceedings does not terminate the taxable year of the bankrupt. See *In Re Sussman,* 289 F. 2d 76, 77 (C.A. 3, 1961); *Stoller* v. *United States,* 320 F. 2d 340, 342 (Ct. Cl. 1963); *Selma Heasley,* 45 T.C. 448, 461 (1966).

[6] Although *Charles R. Stuart,* 38 B.T.A. 1147, 1151 (1938), may seem to imply a contrary conclusion, an examination of the briefs in that case reveals that the issue of the rights of the bankrupt vis-a-vis the trustee in bankruptcy was not argued. Moreover, we note the *Stuart* decision was handed down before the Supreme Court had spoken in *Segal* v. *Rochelle.*

Petitioner makes the further argument that if the loss did not occur on the filing of the petition in bankruptcy, it certainly materialized later in 1963, since the assets of the business were sold by the referee in bankruptcy and the sale was confirmed in that year. We think this argument is also without merit. A trustee in bankruptcy and a bankrupt are separate taxable entities, each of whom is required to file separate returns. *Parkford* v. *Commissioner*, 133 F. 2d 249 (C.A. 9, 1943), affirming 45 B.T.A. 461 (1941) ; *Matter of Steck*, an unreported case (S.D. Ill. 1962, 10 A.F.T.R. 2d 5441, 62–2 U.S.T.C. par. 9702) ; *In Re Loehr*, 98 F. Supp. 402 (E.D. Wis. 1950) ; see Rev. Rul. 68–48, 1968–1 C.B. 301; 3 Collier, Bankruptcy 1521–1522 (14th ed. 1967). The trustee in bankruptcy uses the same basis for the purpose of determining gain or loss as the property had in the hands of the bankrupt. *United States* v. *Sampsell*, 266 F. 2d 631, 635 (C.A. 9, 1959) ; *In Re Loehr*, *supra*. From the foregoing, it follows that any loss in the disposition of the assets is the loss of the trustee and is not directly available to the bankrupt.[7]

Having determined that petitioner is not entitled to the benefit of the claimed net operating loss, we turn to the question whether he should be liable for only one-half of the deficiency because the other half resulted from the payment of a refund to petitioner's former wife based upon a claim by her for the tentative carryback of one-half the loss, pursuant to section 6411. Petitioner and his former wife filed joint Federal income tax returns for the taxable years 1960, 1961, and 1962 to which the claimed 1963 loss was carried. They filed separate returns for 1963 and claimed refunds on separate applications for tentative carryback adjustments with respect to one-half of the claimed loss (Form 1045). Respondent approved the claims and paid the amounts shown thereon by separate checks payable to the order of petitioner or his former wife, respectively.

Section 6013(d)(3)[8] imposes joint and several liability upon each party to a joint return. As a result, the voluntary signatory of a joint return is bound to pay in full and deficiency found owing. *O'Dell*

---

[7] Since the trustee in bankruptcy is not before us, we express no opinion as to whether any such loss (as distinguished from a loss for the part of the taxable year preceding bankruptcy) can be carried back by the trustee to prebankruptcy taxable years of the bankrupt. In addition, since we cannot determine the amount of any such loss, we express no opinion as to whether an unused net operating loss of the trustee inures to the bankrupt as a loss carryover on the termination of the bankruptcy. Compare sec. 642(h) ; Rev. Rul. 68–48, 1968–1 C.B. 301 ; G.C.M. 24617, 1945 C.B. 235.

[8] SEC. 6013. JOINT RETURNS OF INCOME TAX BY HUSBAND AND WIFE.

(a) JOINT RETURNS.—A husband and wife may make a single return jointly of income taxes under subtitle A, even though one of the spouses has neither gross income nor deductions, except as provided below :

\* \* \* \* \* \* \*

(d) DEFINITIONS.—For purposes of this section—

\* \* \* \* \* \* \*

(3) if a joint return is made, the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several.

v. *United States*, 326 F. 2d 451, 456 (C.A. 10, 1964) ; *Lustman* v. *Commissioner*, 322 F. 2d 253 (C.A. 3, 1963) ; *Furnish* v. *Commissioner*, 262 F. 2d 727, 731 (C.A. 9, 1958), remanding 29 T.C. 279 (1957) ; *Michael Pendola*, 50 T.C. 509, 521 (1968) ; *Marie A. Dolan*, 44 T.C. 420, 426 *et seq.* (1965).

In *Marie A. Dolan*, we held that an assessment against one party did not bar a determination of the full deficiency against the other party to a joint return. We think that the same rationale applies here. Petitioner and his former wife were joint and several obligees, as well as obligors, on the 1960, 1961, and 1962 returns. Such being the case, the United States, as the obligor in respect of the refund resulting from the tentative carryback of the claimed 1963 net operating loss, was clearly within its rights in making payment to petitioner's former wife, in the absence of any knowledge of any conflicting claims between them. Cal. Civ. Code sec. 1475 (West 1954) ; *Cober* v. *Connolly*, 20 Cal. 2d 741, 745, 128 P. 2d 519, 521 (1942) ; Restatement, Contracts, secs. 130, 131 ; 2 Williston, Contracts, sec. 343 (3d ed. 1959) ; cf. *Hurley* v. *Southern California Edison Co.*, 183 F. 2d 125, 128 (C.A. 9, 1950) ; see *Pettengill* v. *United States*, 253 F. Supp. 321, 325 (N.D. Ill. 1966). There is not the slightest indication that respondent had any knowledge of the marital difficulties and concomitant potential financial disputes between petitioner and his former wife. Indeed, the indications herein are to the contrary. Both applications for tentative carryback adjustments by petitioner and his former wife appear to be in the same handwriting, to have been dated April 21, 1964, and to have been filed on the same day. Consequently, even if innocence of one spouse of the filing of a claim for refund by the other spouse were a material consideration (which we do not believe is the case where joint returns are involved), petitioner seems clearly to have been lacking in purity of noninvolvement. See *Yagoda* v. *Commissioner*, 331 F. 2d 485, 489, fn. 2 (C.A. 2, 1964).

Petitioner's reliance on section 1.172–7 (b) and (e) of respondent's regulations [9] is misplaced. The references to "joint net operating loss

---

[9] Sec. 1.172–7. Joint return by husband and wife.

(a) *In general.* This section prescribes additional rules for computing the net operating loss carrybacks and carryovers of a husband and wife making a joint return for one or more of the taxable years involved in the computation of the net operating loss deduction. * * *

(b) *From separate to joint return.* If a husband and wife, making a joint return for any taxable year, did not make a joint return for any of the taxable years involved in the computation of a net operating loss carryover or a net operating loss carryback to the taxable year for which the joint return is made, such separate net operating loss carryover or separate net operating loss carryback is a joint net operating loss carryover or joint net operating loss carryback to such taxable year.

\*         \*         \*         \*         \*         \*

(e) *Recurrent use of joint return.* If a husband and wife making a joint return for any taxable year made a joint return for one or more, but not all, of the taxable years involved in the computation of a net operating loss carryover or net operating loss carryback to such taxable year, such net operating loss carryover or net operating loss carryback to the taxable year is computed in the manner set forth in paragraph (d) of this section. Such net operating loss carryover or net operating loss carryback is considered a joint net operating loss carryover or joint net operating loss carryback to such taxable year.

carryback" in that section have significance only in terms of the computation involved and do not purport to determine the substantive rights between spouses. Similarly, neither the fact that a husband and wife may be considered separate taxpayers for certain purposes, nor the fact that the latter may not be the owner of the amount refunded to her as against the husband, militates against the conclusion that, as between husband and the United States, refunds may properly be made to the wife of amounts arising out of overpayments on a joint return. Cf. *St. John* v. *Bookwalter,* an unreported case (W.D. Mo. 1957 1 A.F.T.R. 2d 697, 58–1 U.S.T.C. par. 9216) ; *In Re Illingsworth,* an unreported case (D. Oreg. 1956, 51 A.F.T.R. 1512, 56–2 U.S.T.C. par. 10,004) ; *Marie A. Dolan, supra.*

In this latter connection, we note that petitioner and his former wife were married and appear to have been residents of California during the taxable years involved herein. Consequently, it would appear that, under the community property laws of that State, petitioner's former wife was the owner of any claim for refund with respect to one-half the carryback of the alleged 1963 net operating loss, so that payment of the refund to her was clearly proper. At the very least, petitioner had the burden of proving that such was not the case. Cf. *Lattimore* v. *United States,* 12 F. Supp. 895, 910 (Ct. Cl. 1935) ; *W. O. Allen,* 22 T.C. 70 (1954).

We perceive no latitude from the "strict application of the joint and several liability provisions of the Code" (see *Michael Pendola,* 50 T.C. at p. 522) which affords petitioner the relief which he seeks. His redress, if any, lies in a suit against his former wife for contribution to the deficiency which he is required to pay. Cal. Civ. Code sec. 1432 (West 1954) ; *Murchison* v. *Murchison,* 219 Cal. App. 2d 600, 33 Cal. Rptr. 285 (Dist. Ct. App., 2d Dist. (1963) ; cf. *Elizabeth N. Rude,* 48 T.C. 165, 174 (1967).

*Decision will be entered for the respondent.*

