BETSY FINE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2493–76.    Filed August 16, 1978.

---

*Arnold S. Schafer,* for the petitioner.
*Deborah S. Hack,* for the respondent.

## OPINION

FEATHERSTON, *Judge:* Respondent determined a deficiency in the amount of $3,874.84 in petitioner's Federal income tax for 1969. The issue here involves the procedure to be followed by the Internal Revenue Service in recovering a credit tentatively allowed as a carryback adjustment in respect of petitioner's joint return for 1969, applied on an unpaid employment tax penalty liability of her husband, and later shown by an audit to have been erroneous. Specifically, the issue is whether the recovery must be effected by reversing the credit and reinstating the unpaid assessment or whether the deficiency procedures prescribed by section 6212[1] may be followed.

All the facts have been stipulated.

Petitioner Betsy Fine (hereinafter petitioner) was a legal resident of Culver City, Calif., when she filed her petition and amended petition. She and her husband, Maynard Fine (Maynard), filed joint Federal income tax returns for 1969 and 1972.

As the responsible officer of Wheatfield Motor Inn, Maynard failed to collect and pay over withholding taxes for the period June 1970 to March 1971, and on September 29, 1971, he was assessed a 100-percent penalty in the sum of $28,824.14. Maynard consented to the assessment but later contested it in a bankruptcy proceeding in the United States District Court for the Eastern District of Michigan, Southern Division. On January 28, 1976, an order dismissed the cause with prejudice. The assessment was Maynard's individual liability.

On their joint Federal income tax return for 1972, petitioner

---

[1]All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue.

and Maynard reported a net operating loss. On April 16, 1973, they filed Form 1045, Application for Tentative Refund from Carryback of Net Operating Loss or Unused Investment Credit, claiming their alleged 1972 loss as a net operating loss carryback to 1969. Respondent granted the tentative carryback allowance in the amount of $3,874.84, the amount previously paid as tax on petitioner's and Maynard's joint income tax return for 1969. The full amount of the 1969 tax was paid from Maynard's income. Petitioner did not have any income in 1969.

On June 4, 1973, respondent, instead of issuing a cash refund, credited the $3,874.84 to the unpaid balance of the September 29, 1971, employment tax penalty assessment against Maynard. Subsequently, in the audit of the taxable year 1972 and the tentative carryback of the 1972 net operating loss, respondent determined that petitioner and Maynard did not incur a net operating loss in 1972. In order to recover the credit allowed against Maynard's employment tax penalty assessment, respondent determined that there is a deficiency of $3,874.84 in petitioner's joint income tax liability for 1969.

Petitioner does not challenge respondent's determination that she and Maynard did not incur a net operating loss in 1972. Nor does she challenge the Internal Revenue Service's right to credit any overpayment for 1969 against Maynard's individual liability for the employment tax penalty assessment.[2] She recognizes that she had no property interest in the overpayment for 1969 generated by the tentative application of the 1972 carryback.[3] Petitioner maintains, however, that she did not receive any economic benefit from the overpayment tentatively allowed and applied on Maynard's individual liability. She argues, therefore,

---

[2]SEC. 6402. AUTHORITY TO MAKE CREDITS OR REFUNDS.

(a) GENERAL RULE.—In the case of any overpayment, the Secretary or his delegate, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall refund any balance to such person.

[3]Petitioner cites the following quotation from Rosen v. United States, 397 F.Supp. 342, 343–344 (E.D. Pa. 1975), in making this concession:

"Spouses filing a joint return have separate interests in any overpayment, the interest of each depending on his or her income, i.e., an overpayment is apportionable to a spouse to the extent that he or she contributed to the overpaid tax. See Maragon v. United States, 153 F.Supp. 365, 139 Ct.Cl. 544 (1957). Moreover, the Tax Court repeatedly has held that the filing of a joint return does not have the effect of converting the income of one spouse into the income of the other. See, e.g., Robert A. Coerver, 36 T.C. 252 (1961), aff'd. per curiam, 297 F.2d 837 (3d Cir. 1962); Marie A. Dolan, 44 T.C. 420 (1965). * * * [Fn. ref. omitted.]"

See also Rev. Rul. 74–611, 1974–2 C.B. 399.

that respondent's appropriate remedy, upon completing the audit of the 1972 joint return, was to reverse the credit of the 1969 overpayment to Maynard's employment tax penalty liability and to restore that amount as a credit to discharge the joint liability of herself and Maynard for 1969, created by the tentatively allowed carryback, citing *Commissioner v. Newport Industries, Inc.*, 121 F.2d 655 (7th Cir. 1941), revg. 40 B.T.A. 978 (1939).

We hold for respondent.

The Code provisions on the tentative allowance of net operating loss carryback adjustments and the manner in which any erroneous allowances are to be adjusted are specific and detailed. Section 6411(a) provides that a taxpayer who has incurred a net operating loss may file an application for a tentative carryback adjustment "of the tax for the prior taxable year affected by a net operating loss carryback provided in section 172(b)." Section 6411(b) contemplates that the Internal Revenue Service will make a "limited examination of the application" and determine "the amount of the decrease in the tax attributable to such carryback upon the basis of the application and the examination." The section then provides:

Such decrease shall be applied against any unpaid amount of the tax decreased * * * and any remainder shall be credited against any unsatisfied amount of any tax for the taxable year immediately preceding the taxable year of the net operating loss * * * . Any remainder shall, within such 90-day period, be either credited *against any tax* or installment thereof *then due from the taxpayer*, or refunded to the taxpayer. [Emphasis added.]

Thus, respondent was following the specific directions in section 6411(b) in crediting against Maynard's unpaid employment tax penalty liability the "decrease" in the 1969 tax attributable to the tentative allowance of the 1972 net operating loss.

The Code is equally explicit in stating how the Internal Revenue Service should proceed if, on audit, it finds that the tentative allowance of the net operating loss carryback adjustment was erroneous. Three remedies are provided: (1) A suit for erroneous refund where a refund actually has been made, secs. 7405 and 6532(b); (2) assessment as a mathematical error of a deficiency for the year to which the net operating loss carryback was applied, sec. 6213(b)(3); or (3) assessment pursuant to a notice of deficiency issued under section 6212 of any deficiency

for the year to which the net operating loss carryback was applied.[4]

None of these remedies is exclusive. In *Polachek v. Commissioner*, 22 T.C. 858, 863–865 (1954), this Court rejected the contention that the mathematical error procedure to recover amounts applied, credited, or refunded is exclusive. In *Neri v. Commissioner*, 54 T.C. 767, 770 (1970), the Court rejected a contention that the suit-for-erroneous-refund procedure is exclusive even where the refunds were made with respect to improper years and sustained a deficiency determined pursuant to section 6212.[5] See also *Krieger v. Commissioner*, 64 T.C. 214, 216 (1975). Respondent was, therefore, free to pursue the third remedy, as he did in the instant case, determining a deficiency for 1969, the year to which the claimed net operating loss applied.

Clearly there is a deficiency for 1969. That is, the amount of the tax imposed by the Code for 1969 exceeds the amount shown as tax on petitioner's joint return for that year reduced by any "rebate" made. Sec. 6211(a). The fact that the 1969 overpayment or decrease in tax resulting from the carryback was credited rather than refunded is not controlling. The term "rebate" includes the credit of the decrease in the 1969 tax which was applied against Maynard's employment tax penalty liability. Sec. 6211(b)(2).[6]

---

[4]Assessments under both (2) and (3) must be made within the time prescribed by sec. 6501(h), i.e., within the period in which deficiencies "for the taxable year of the net operating loss" may be assessed.

[5]In *Neri v. Commissioner*, 54 T.C. 767, 770–771 (1970), we explained:

"This provision [on tentative carryback adjustments] was first enacted as section 3780 of the Internal Revenue Code of 1939 by the Tax Adjustment Act of 1945 (Act of July 31, 1945, ch. 340, 59 Stat. 521) and was accompanied by a committee report (H. Rept. No. 849, 79th Cong., 1st Sess. (1945), 1945 C.B. 566, 580–583) which emphasized the tentative character of adjustments made pursuant thereto. Referring specifically to subsection (c) of 1939 Code section 3780—the predecessor of section 6213(b)(2), which authorizes the assessment as mathematical errors of deficiencies attributable to tentative carryback adjustments—the committee report states (1945 C.B. at 583):

" 'It is to be noted that the method provided in subsection (c) of section 3780 to recover any amounts applied, credited, or refunded under section 3780 which the Commissioner determines should not have been so applied, credited, or refunded is not an exclusive method. It is contemplated that the Commissioner will usually proceed by way of a deficiency notice in the ordinary manner, and the taxpayer may litigate any disputed issues before the Tax Court. The Commissioner may also proceed by way of a suit to recover an erroneous refund.' "

[6]SEC. 6211. DEFINITION OF A DEFICIENCY.

(a) IN GENERAL.—For purposes of this title in the case of income, estate, and gift taxes imposed by subtitles A and B and excise taxes imposed by chapters 42 and 43, the term "deficiency" means the amount by which the tax imposed by subtitle A or B, or chapter 41, 42 or 43 exceeds the excess of—

(1) the sum of

Respondent is not authorized or directed by anything in the Code, as petitioner contends, to "reverse the offset of the husband's liability and reinstate the amount as it existed prior to the overpayment." Indeed, a procedure of crediting and reversing credits tentatively allowed could create chaos in the administration of the tax laws. In some instances, the reversal of the tentative credit and the revival of the deficiency against which the credit was made would occur after the 6-year limitations period on collection of assessments has expired. Sec. 6502. Moreover, the mathematical error and the deficiency procedures, the second and third remedies discussed above, must be undertaken within the period in which deficiencies "for the taxable year of the net operating loss" may be assessed. There is no similar statutory limitations period for the corrective procedures advocated by petitioner.

In *Commissioner v. Newport Industries, Inc.*, 121 F.2d 655 (7th Cir. 1941), revg. 40 B.T.A. 978 (1939), relied upon by petitioner, the Commissioner *erroneously* allowed an overpayment and credited it against a deficiency for a prior year. The Court of Appeals rejected the taxpayer's contention that the Commissioner could correct his error only through a suit for erroneous refund and held that the Commissioner could reverse the credit and reinstate the deficiency. But that case does not deal with the recovery of amounts applied, credited, or refunded as a result of tentatively allowed carryback deductions pursuant to section 6411. Instead, that case deals with administrative actions erroneously taken. In the instant case respondent made no such mistake. He followed the statute. The initial allowance of a net operating loss carryback is only tentative, sec. 6411(b), and the Code provisions, reviewed above, are explicit on how the overpayment attributable to the carryback is to be credited or refunded. Such provisions also prescribe the steps the Commis-

---

(A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus

(B) the amounts previously assessed (or collected without assessment) as a deficiency, over—

(2) the amount of rebates, as defined in subsection (b)(2), made.

(b) RULES FOR APPLICATION OF SUBSECTION (a).—For purposes of this section—

\*       \*       \*       \*       \*       \*       \*

(2) The term "rebate" means so much of an abatement, credit, refund, or other repayment, as was made on the ground that the tax imposed by subtitle A or B or chapter 42 or 43 was less than the excess of the amount specified in subsection (a) (1) over the rebates previously made.

sioner may take if a subsequent audit shows that a net operating loss did not exist and, consequently, the tentatively allowed credit or refund has to be recovered. The Commissioner followed those steps.

It is true that, as a result of the disallowance of the carryback adjustment claim, petitioner finds herself jointly and severally liable for the 1969 deficiency which she would not have owed had she not signed the tentative carryback adjustment claim. The effect of the tentative allowance of the claimed carryback adjustment, as it turned out, was to transfer credit for a tax payment from the 1969 income tax account, for which petitioner was jointly and severally liable, to the employment tax penalty account, for which only Maynard was liable. But this was a statutory consequence of petitioner's filing the 1969 and 1972 joint income tax returns with Maynard (*Bloomfield v. Commissioner*, 52 T.C. 745, 752 (1969)), and then signing the application for tentative refund from carryback of the claimed 1972 loss. Unfortunate though it may be for petitioner, it is a consequence directed by the specific Code provisions discussed above.

To reflect the foregoing,

*Decision will be entered for the respondent.*