T.C. Memo. 2002-259

UNITED STATES TAX COURT

MAURICE W. SPIEGEL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 619-00.                    Filed October 9, 2002.

Maurice W. Spiegel, pro se.

<u>Leonard T. Provenzale</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent issued a final determination
disallowing petitioner's claim under section 6404(e) to abate
interest related to petitioner's 1987, 1989, 1991, and 1992 tax

years.[1]  Petitioner timely filed a petition under section 6404(g)[2] and Rule 280.

The sole issue for decision is whether respondent's denial of petitioner's request to abate interest relating to his 1989, 1991, and 1992 tax years was an abuse of discretion.  We hold that it was not.

Section references are to the Internal Revenue Code as amended.  Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A.    Petitioner and the $150,000 Estimated Tax Payment

Petitioner resided in Boca Raton, Florida, when he filed his petition.  He is a retired attorney.

On April 15, 1986, petitioner paid $150,000 in estimated tax to respondent from his and his wife's joint checking account. Respondent credited the payment to petitioner's 1986 tax year.

---

[1]  Respondent concedes that the statute of limitations on collections bars respondent from collecting any tax liability for petitioner's 1987 tax year.  Thus, abatement of interest associated with petitioner's 1987 tax year is moot.

[2]  This was redesignated sec. 6404(i) by the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, secs. 3305(a), 3309(a), 112 Stat. 685, 743, 745.

Sec. 6404(i) was later redesignated sec. 6404(h) by the Victims of Terrorism Relief Act of 2001, Pub. L. 107-134, sec. 112(d)(1)(B), 115 Stat. 2427, 2434-2435.

B.   Petitioner's Separation and Filing of Separate Returns

Petitioner and his wife separated in September 1986.  They filed separate returns for 1986 and 1987.

Petitioner reported a tax liability of $11,985 on his 1986 return.  In 1987, petitioner requested that respondent:  (1) Credit $11,985 of the $150,000 payment to his liability for 1986; (2) credit $70,000 to his estimated tax for 1987; and (3) refund $68,015.  On November 23, 1987, respondent (1) credited $70,000 to petitioner's tax liability for 1987, and (2) refunded $68,015 to petitioner.

C.   Respondent's 1988 Reallocation of the $150,000 Payment

As of April 1988, respondent had credited $81,985 of the $150,000 payment to petitioner's 1986 and 1987 tax years and refunded $68,015 to petitioner.  Despite that, in April 1988, the accountant for petitioner's wife asked respondent to allocate the $150,000 payment in proportion to the tax liability of each spouse for 1986.  In April or May 1988, respondent allocated $14,471.10 of the $150,000 estimated tax payment to petitioner and $135,582.90 to his wife.  Respondent's position now is that the $68,015 refund was erroneous, but that the time provided to respondent under section 6532(b) to sue to recover an erroneous refund has expired.

D.   Petitioner's Tax Returns for 1987-92

Petitioner filed his 1987 Federal income tax return on October 14, 1988.  On it, he claimed that he should be credited with a $70,000 estimated tax payment which he believed had been carried forward from the $150,000 payment.  However, because respondent had reallocated the $150,000 estimated tax payment between petitioner and his wife as described above, respondent disallowed petitioner's carryover of the $70,000 credit from the $150,000 payment.

Petitioner filed tax returns for 1988 through 1992 on which he carried forward estimated tax payments as follows:

| Year | Claimed estimated tax payments carryforward |
|------|------------------------|
| 1988 | $62,592 |
| 1989 | 62,592 |
| 1990 | 52,799 |
| 1991 | 52,799 |
| 1992 | 45,314 |

Respondent disallowed petitioner's carryovers of estimated tax payments to tax years 1988, 1989, 1991, and 1992 because respondent had reallocated most of the $150,000 tax payment to petitioner's wife, leaving nothing for petitioner to carry forward to those years.  Respondent assessed additional taxes for petitioner for 1989 on September 14, 1992.

E.    Petitioner's Divorce Agreement

Petitioner and his wife signed a "Stipulation and Agreement," dated January 30, 1989.  Article 6.6 of that agreement permitted the parties to retain any refund on separate returns they filed.  Petitioner and his wife had no agreement to allocate estimated tax payments.  Petitioner and his wife were divorced in May 1989.

F.    Respondent's Levy on Petitioner's Keogh Account

On October 13, 1993, respondent levied $14,246.41 from petitioner's Keogh account and credited that amount to petitioner's 1985 tax year.  Also on October 13, 1993, respondent subtracted $14,246.41 from the amount credited to petitioner's 1985 tax year and credited that amount to his 1989 tax year.

G.    Petitioner's Claim for Refund

Petitioner filed a claim for a $57,532.41 refund for 1992 on September 28, 1995.  He calculated that amount by reducing the $70,000 estimated tax payment by his tax liabilities of $7,408 for 1987, $9,886 for 1989, $7,485 for 1991, $2,351 for 1992, and then increasing the balance by $93 for withholding in 1989 and by $14,246.41 and $343 for levies on Keogh and bank accounts in 1993.[3]  Respondent denied petitioner's claim on May 15, 1996.

---

[3]  We note that the correct balance after decreases for petitioner's tax liabilities and increases for withholdings levies would be $57,552.41, if the $70,000 estimated tax payment were available as a carryover.

H.   Respondent's Communication With Petitioner in 1998 Regarding
     Respondent's 1988 Reallocation of the $150,000 Payment

On July 28, 1998, respondent told petitioner by letter that respondent had reallocated the $150,000 payment in proportion to the tax liability for 1986 of petitioner and his former wife and that, as a result, petitioner had unpaid tax liabilities for 1987, 1989, 1991, and 1992.  The record does not show whether petitioner knew before July 28, 1998, that respondent had reallocated the $150,000 payment.

I.   Tax Collection Waiver and Respondent's Final Determination

On October 15, 1998, petitioner signed a Form 900, Tax Collection Waiver, in which he agreed to extend to December 31, 2000, the period for respondent to collect tax that respondent had assessed on December 19, 1988, for 1987, and on November 19, 1990, for 1989.

On August 12, 1999, respondent issued a final determination denying petitioner's claim to abate interest under section 6404(e).

OPINION

A.   Background

The Commissioner may abate part or all of the interest assessed on any deficiency or payment of income, gift, estate, and certain excise tax to the extent that any error or delay in payment is attributable to erroneous or dilatory performance of a ministerial act by an officer or employee of the Commissioner if:

(1) The erroneous or dilatory ministerial act occurred after the Commissioner notified the taxpayer in writing about the deficiency or payment, and (2) the taxpayer did not contribute significantly to the error or delay.  Sec. 6404(e)(1).[4]

---

[4] Sec. 6404(e)(1) as enacted in 1986 and as applicable here provides:

> SEC. 6404(e). Assessments of Interest Attributable to Errors and Delays by Internal Revenue Service.--
>
> (1) In General.--In the case of any assessment of interest on--
>
> (A) any deficiency attributable in whole or in part to any error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial act, or
>
> (B) any payment of any tax described in section 6212(a) to the extent that any error or delay in such payment is attributable to such officer or employee being erroneous or dilatory in performing a ministerial act,
>
> the Secretary may abate the assessment of all or any part of such interest for any period. For purposes of the preceding sentence, an error or delay shall be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved, and after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment.

Congress amended sec. 6404(e) in 1996 to permit abatement of interest for "unreasonable" error and delay in performing a
(continued...)

A ministerial act is a procedural or mechanical act that does not involve the exercise of judgment or discretion by respondent. Sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987). The Tax Court has jurisdiction to review whether the Commissioner's failure to abate interest was an abuse of discretion. Sec. 6404(g)(1); Krugman v. Commissioner, 112 T.C. 230, 239 (1999); Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

B.   Petitioner's Contentions

Petitioner contends that respondent's denial of his request to abate interest on his tax liability for 1989, 1991, and 1992 was an abuse of discretion. Petitioner alleges that respondent: (1) Incorrectly allocated part of the $150,000 estimated tax payment to his spouse; (2) illegally levied petitioner's Keogh account on August 30, 1993; (3) erroneously applied funds taken by levy to petitioner's 1985 taxable year; and (4) improperly applied petitioner's tax collection waiver to a 1992 assessment for the 1989 tax year.

Respondent contends that there were no errors or delays due to ministerial acts by respondent and that respondent's refusal

---

[4](...continued)
"ministerial or managerial" act. Taxpayer Bill of Rights 2 (TBOR 2), Pub. L. 104-168, sec. 301(a), 110 Stat. 1452, 1457 (1996). That standard first applies to tax years beginning after July 30, 1996, TBOR 2, sec. 301(c), 110 Stat. 1457, and thus does not apply in the instant case.

to abate interest was not an abuse of discretion.

    1.   <u>Whether Respondent's Refusal To Abate Interest That Accrued as a Result of Respondent's Reallocation of the $150,000 Estimated Tax Payment Was a Ministerial Error</u>

Petitioner points out that he timely paid tax for 1989, 1991, and 1992, and that respondent assessed interest only because respondent reallocated most of the $150,000 estimated tax payment to his former wife. Petitioner contends that the reallocation was a ministerial error. We disagree.

Petitioner's wife asked respondent to reallocate the $150,000 payment between petitioner and herself. Respondent told petitioner that the reallocation was based on tax liabilities reported on their separate 1986 returns. Respondent's reallocation of the estimated tax payment required the exercise of judgment in evaluating petitioner's wife's claim, and deciding whether and how much to allocate to each spouse. Respondent's refusal to abate interest that accrued as a result of that decision was not ministerial.[5]

---

[5] Since respondent's reallocation of the $150,000 estimated tax payment was not ministerial, we need not decide if it was an error. Compare <u>Gordon v. United States</u>, 757 F.2d 1157, 1160 (11th Cir. 1985), and <u>Gens v. United States</u>, 230 Ct. Cl. 42, 673 F.2d 366, 368 (1982) (overpayment allocated between spouses in proportion to their tax payments), with <u>Bloomfield v. Commissioner</u>, 52 T.C. 745, 752 (IRS properly allocated refund of overpayment on a joint return to wife; husband's redress lies in suit against her for contribution). If respondent seeks payment through use of lien or levy procedures of any amount owing from petitioner as a result of respondent's reallocation of petitioner's $150,000 payment, petitioner may be able to obtain judicial review of that issue (1) on a prepayment basis in a subsequent collection action in this Court under sec. 6330, or
(continued...)

2.  <u>Whether Petitioner Is Entitled to Abatement of Interest as a Result of (a) Respondent's Levy on Petitioner's Keogh Account; (b) Respondent's Initial Crediting of the Levied Funds to 1985; or (c) Petitioner's Agreement To Extend the Time To Assess Tax</u>

Petitioner seeks abatement of interest related to his 1989 tax year on the grounds that respondent allegedly improperly levied his Keogh account, and applied the funds levied from his Keogh account to his 1985 year before posting them to his 1989 year. We disagree. Respondent's levy resulted in collection of tax, which reduced the amount of interest that would otherwise have accrued. No interest accrued because of the levy. Respondent credited the levied funds to petitioner's 1985 tax year on October 13, 1993, but subtracted the levied amount and credited those funds to petitioner's 1989 tax year, also on October 13, 1993. No additional interest accrued for 1989 as a result of crediting the levied funds to petitioner's 1985 tax year.

On October 15, 1998, at respondent's request, petitioner signed a tax collection waiver for assessments which extended to December 31, 2000, the time to collect petitioner's tax liabilities assessed on December 19, 1988, for tax year 1987, and on November 19, 1990, for tax year 1989. However, no additional interest accrued for 1989 as a result of petitioner's signing the tax collection waiver.

---

[5](...continued)
(2) in a subsequent refund case in a refund forum.

C.  <u>Conclusion</u>

For the foregoing reasons, we conclude that respondent's denial of petitioner's claim to abate interest relating to his 1989, 1991, and 1992 tax years was not an abuse of discretion.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered for respondent</u>.