## PARKFORD v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10132.

Circuit Court of Appeals, Ninth Circuit.

Jan. 19, 1943.

Rehearing Denied Feb. 16, 1943.

Writ of Certiorari Denied May 3, 1943.

See 63 S.Ct. 1029, 87 L.Ed. ——.

Willard L. Ellis and Louis H. Brownstone, both of San Francisco, Cal., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, and Carlton Fox, Sp. Assts. to Atty. Gen., for respondent.

Before MATHEWS, STEPHENS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The petition is for review of a decision of the Board of Tax Appeals. It involves an asserted deficiency in income taxes for the year 1936.[1]

Two main questions are presented, (1) whether a contingent fee of the taxpayer for personal services, paid to and received by his trustee in bankruptcy in 1936, was accruable by the taxpayer as income in that year or in the previous year, 1935; and (2) whether a like fee, accruing after bankruptcy and paid to the trustee in 1936, was or was not income to the taxpayer.

1. In 1935 the taxpayer was employed by the president of Universal Consolidated Oil Company to negotiate settlement of a controversy between minority stockholders of Universal and the receiver of the Richfield Oil Company, which was in federal equity receivership. The purpose of the employment was to obtain 186,788 shares of Universal stock held by a bank as trustee for the bondholders of Richfield, and 1,000 shares held by the receiver of Richfield. Taxpayer's compensation was contingent. He was to receive 9,000 shares of the stock in the event the proposed settlement was effected. In November 1935 the receiver agreed with Universal's president to surrender the shares in return for certain property and money. The agreement was made subject to the approval of the United States Court in which the Richfield receivership was pending. On December 23, 1935, the stockholders of Universal met and ratified the settlement, together with the arrangement for taxpayer's compensation in effecting it. On January 15, 1936, the receivership court confirmed and approved the settlement with certain modifications.

On January 24, 1936, an involuntary petition was filed against the taxpayer and he was adjudged a bankrupt on February 14 following. In March of that year a trustee was appointed with authority to conduct the taxpayer's business.[2] On petition of the trustee the court ordered Universal to deliver directly to the trustee the shares of Universal to which the taxpayer had become entitled as compensation for his services aforesaid. Later in the year the trustee sold the stock. None of the shares nor the proceeds derived from their sale was at any time received by the taxpayer personally. Their fair market value on January 15, 1936, was $48,000.

Taxpayer kept his accounts and made his returns on the accrual basis. Neither in his return for 1935 nor 1936 did he include or account for these shares as income. The Commissioner determined, and the Board held, that the shares accrued to him as income on January 15, 1936, the date upon which the order of the court in the Richfield equity proceeding was entered approving the compromise. The taxpayer denies that the shares accrued to him as income at all, and contends further, that if they did accrue to him as income the accrual was in December 1935, when the stockholders of Universal approved the agreement in respect of his compensation.

 We think the taxpayer is wrong on both counts. His first contention will be considered under the subsequent heading relative to the fee admittedly accruing in 1936. As to the second, his right to receive the stock became fixed only upon approval by the court of the settlement agreement between the receiver and Universal. Cf. H. Liebes & Co. v. Commissioner, 9 Cir., 90 F.2d 932. The proceeds of the settlement were not available to Universal, in law or otherwise, prior to the confirmation by the receivership court. Cf. North American Oil Consolidated v. Burnet, 286 U.S. 417, 423, 52 S.Ct. 613, 76 L.Ed. 1197. The shares which the taxpayer was to have were part of the block of Universal stock in the hands of the receiver and the trustee bank; and taxpayer's right to demand them was contingent on the approval of the receiver's agreement under which they were to be turned over to Universal. The Board so found.

---

[1] Decision of a companion case involving the wife of the taxpayer is, according to a stipulation on file, to follow the determination in the present proceeding.

[2] A receiver had previously been put in charge by the bankruptcy court.

2. In 1935 the taxpayer was employed to negotiate settlement of a controversy between Associated Oil Company and one Guiberson, it being agreed that he should receive 10% of the amount paid if settlement were effected. Taxpayer's services began in September 1935 and continued until February 7, 1936, part of the services being rendered before and part after the filing of the petition in bankruptcy. The negotiations culminated in a settlement for $150,000, so the taxpayer became entitled to receive $15,000.

The trustee in bankruptcy claimed the whole fee, and the amount was thereupon deposited in escrow. After a hearing in the bankruptcy court, a compromise between the taxpayer and the trustee was approved under which the taxpayer received half the amount and the trustee the remainder. The taxpayer included the $7,500 thus received by him in his return for 1936. The Commissioner assessed the balance, and the Board on redetermination approved the assessment.

Taxpayer contends that he can not be required to pay an income tax upon cash which he did not and could not receive; and that whatever contract right vested in him as a result of his services went to his trustee in bankruptcy coincident with the initiation of the bankruptcy proceeding. He says the trustee while conducting the bankrupt's business received the fruits of the bankrupt's services along with other income, and accounted therefor in his tax return.

It seems plain that petitioner derived taxable income in consequence of the payment of the fee. In the hands of the trustee the $7,500 was not income but a capital asset. The trustee did nothing toward earning it. He properly treated both this item and the amount received from the sale of the Universal stock as capital gains, and the return filed by him for 1936 showed a net loss of $22,000.

It has been suggested by the government that the trustee was legally entitled to no part of the fee; that the contract, being entirely contingent upon the successful completion by the taxpayer of his services, was not assignable, nor was the inchoate right to the fee subject to seizure under judicial process. Hence, title did not pass to the trustee in bankruptcy. See § 70, sub. a(5),

of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. a(5); In re Baxter, 6 Cir., 104 F.2d 318. However that may be, we believe it unnecessary to consider the point.

The situation of the taxpayer would not be different taxwise had the sum owing been seized by a creditor through process of garnishment after it had been earned. The taxpayer obtained the economic benefit of the income through its disbursement to his creditors, although he denies receiving any benefit because, he says, he was entitled to his discharge regardless of whether the creditors received anything. But we think the latter circumstance is immaterial. The net result of petitioner's argument is that the portion of the fee received by the trustee, although undeniably income to somebody, was legally income to nobody.[3] We conclude that since the income accrued to the taxpayer he must account for it in his return. The taking over of the amount by the trustee for the payment of debts was the final step by which the taxpayer obtained the fruits of the accrual. Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655; Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918; Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916. The same principle applies to the Universal stock.

3. A third contention remains, which we will notice briefly. The taxpayer claims that he sustained a deductible loss in 1936 by reason of the seizure and permanent retention of all his assets by the bankruptcy court.

Taxpayer calls attention to no statute granting such a deduction; and since it is settled law that deductions are permitted as a matter of grace only, the taxpayer must not only point to an appropriate statute but must bring himself squarely within its terms. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348. Moreover, the taxpayer sustained no loss. His debts appear to have exceeded his assets, and from his debts he was discharged. If he had voluntarily compromised his with his creditors by an assignment of his assets he could hardly assert a deductible loss. We perceive no reason why he may do so in the present circumstances.

The decision is affirmed.

---

[3] The Collector presented a claim for income taxes of the bankrupt for 1936, but the claim was disallowed by the bankruptcy court as not provable.