V. Philip Marlowe v. Commissioner.
Marlowe v. Commissioner
Docket No. 2289-65.
United States Tax Court
T.C. Memo 1967-12; 1967 Tax Ct. Memo LEXIS 250; 26 T.C.M. (CCH) 80; T.C.M. (RIA) 67012; January 27, 1967
Phillip Nusholtz, 2126 First National Bldg., Detroit, Mich., for the petitioner. Joseph F. Dillon, for the respondent. TANNENWALD
Memorandum Opinion TANNENWALD, Judge: Respondent has determined a deficiency in income tax of $1,632.41 based upon a blanket disallowance of all *251 of the itemized deductions, a dependency deduction, and status as a head of household claimed by petitioner on his return for the taxable year ended December 31, 1963. In his petition, petitioner disputed all of these disallowances. In addition, by an amendment to his petition, petitioner claimed an additional business loss of $5,878.08 as a result of his bankruptcy during the calendar year. Petitioner during the taxable year was unmarried. He resided in Pontiac, Michigan, and filed his return on a cash basis with the district director of internal revenue at Detroit, Michigan. As a result of certain conclusions reached by the Court during the course of the trial herein and the subsequent agreement of the parties, we find that petitioner paid the following amounts for the following purposes: (a) Charitable contributions in the amounts of $20.00 to the Sisterhood of B'nai Israel, $29.00 to B'nai B'rith, and $28.50 to the United Fund, or a total of $77.50. (b) Automobile license fees to the State of Michigan - $33.10. (c) Gasoline taxes to the State of Michigan - $90.00. (d) Interest paid to various creditors - $463.55. (e) Union dues - $60.00. (f) Laundry charges in connection *252 with special work clothes required in connection with petitioner's employment - $22.40. (g) Sales taxes - $241.00. We hold that petitioner is entitled to deductions in the above-stated amounts. Petitioner claimed a deduction of $100 representing an alleged loss for accidental damage to his automobile. His testimony as to this item was vague and inconclusive. The record was held open for the submission by petitioner of the police report on the accident but no such report was submitted. On the record before us, we hold that petitioner has failed to prove the loss and respondent's disallowance is accordingly sustained. Petitioner claimed $17.80 as a business expense representing the cost of small tools required for use in connection with his employment. The aggregate cost of all tools so required ran between $200 and $400 and their average life was 20 years. We find that petitioner expended the $17.80 as claimed during the taxable year. While the record on this issue is not entirely satisfactory, we are satisfied that petitioner is entitled to a deduction in at least this amount either by way of a business expense or depreciation and we so hold. Petitioner $25claimed as a deduction *253 for a fee paid for the preparation of his income tax return. Here again the record is imprecise, but we are satisfied that a payment was made in that amount and for that purpose. Accordingly, we hold that petitioner is entitled to the deduction as claimed. We are thus left with four issues requiring disposition: (a) a claimed "theft" loss of $5,000 from an alleged conversion of petitioner's household furnishings and personal belongings by a bailee for hire; (b) an alleged loss due to bankruptcy; (c) whether petitioner is entitled to claim his daughter Lynne Deborah as a dependent; and (d) whether petitioner is entitled to utilize the rates of tax applicable to a head of household. We deal with these issues seriatim. 1. "Theft" loss. In July 1963, petitioner stored his household furnishings and personal belongings (including those of his two daughters) with one Robert Tompkins and agreed to pay therefor cartage, packing, and storage charges. On or about October 26, 1963, Tompkins loaned petitioner $250. Petitioner gave Tompkins a promissory note in the sum of $333.50 representing the $250 loan and $83.50 unpaid charges due Tompkins up to that date. The loan was payable on November 26, 1963. The *254 household "items" then stored with Tompkins were pledged by petitioner as collateral for the note. Tompkins demanded payment by registered letter dated November 27, 1963, in which he notified petitioner that the items in storage would be sold on December 2, 1963 if payment was not made. On December 2, pursuant to petitioner's request, Tompkins gave him an additional ten days to make payment. Petitioner did not pay his indebtednes or cause it to be paid prior to January 1, 1964. During the latter part of December 1963, Tompkins sold petitioner's piano and applied the proceeds in partial satisfaction of petitioner's indebtedness. During the period from July 1963 to January 1, 1964, petitioner and his daughters with petitioner's permission from time to time withdrew various items from storage. In January 1964, petitioner's daughter Bonita made a further substantial withdrawal and paid Tompkins $300. Thereafter, Tompkins disposed of the then remaining furnishings and belongings of petitioner otherwise than by public sale. Petitioner never contacted the police or any other public authority regarding his dissatisfaction with the handling of his furnishings and belongings by Tompkins. *255 On the foregoing facts, we are unable to find that petitioner suffered a loss through theft in 1963, so as to entitle him to a deduction under section 165. [1] Petitioner claims that Tompkins failed to comply with the foreclosure provisions of Michigan law applicable to chattel mortgages and that this constituted a conversion which we should characterize as a "theft." It is far from clear to us that the mere failure of a bailee for hire to fulfill the technical requirements of local law merits such a characterization. See Aaron F. Vance, 36 T.C. 547, 551 (1961). However, we need not decide this issue because petitioner's position suffers from other incurable infirmities. The record fails to reveal either the market value or petitioner's cost basis for the items. Neither the amount set forth on his tax return for the $6,000 valuation of all his property contained in an insurance policy constitutes satisfactory proof on this score. In this connection, we note that in a petition in bankruptcy, filed by petitioner in August 1963, petitioner valued his household goods at $500. Moreover, in view of the withdrawals by petitioner and his daughters, it is impossible for us to determine *256 just what items remained in storage at the time the alleged conversion or theft took place. Finally, except for the piano (the value or cost of which is not revealed), any such conversion or theft took place not in 1963 but in 1964, a year not before us. We hold that petitioner is not entitled to any deduction for a loss under section 165. 2. Bankruptcy loss. Prior to the taxable year, petitioner was engaged in the business of selling wine and beer under the name and style of "Town & Country Party Store." Petitioner lost his business as a result of foreclosure proceedings in October 1962. In August 1963, petitioner filed a voluntary petition in bankruptcy listing as his sole assets household goods valued at $500 and two automobiles valued at $50. An aggregate of $8,100.62 claims of creditors were listed in the petition. Petitioner was adjudicated a bankrupt on November 22, 1963. During 1963, petitioner paid $230.99 representing license fees on the business due the Internal Revenue Service and $470.98 representing delinquent sales taxes owed to the State of Michigan. By an amendment to his petition, petitioner asserted *257 a loss of $5,878.08 as a result of the bankruptcy, allegedly representing petitioner's unrecovered cost in the assets of his beer and wine business. Petitioner assumes that a bankruptcy loss per se entitles him to a deduction. Such is not the case. Frances M. Parkford, 45 B.T.A. 461 (1941), affd. 133 F. 2d 249 (C.A. 9, 1943); B. & L. Farms Co. v. United States, 238 F. Supp. 407 (S.D. Fla. 1965); see Charles R. Stuart, 38 B.T.A. 1147, 1151 (1938). Furthermore, any loss which petitioner suffered as a result of the termination of his business clearly occurred in 1962, a year not before us. The petition in bankruptcy did not list any assets of the business as being owned by petitioner at that time. Petitioner claims that a right of redemption of the business arose as a result of the foreclosure in 1962, which continued until the adjudication in bankruptcy in 1963. The provisions of Michigan law relied upon by petitioner do not so provide and it is obvious that petitioner's mere assertion on brief that this situation obtained, "since there is no indication in the evidence as to the validity of the sale," ignores the fact that he has *258 the burden of proof. Finally, it would appear that the claims of several of petitioner's creditors arose out of transactions of a personal nature. Cf. Charles R. Stuart, supra, at p. 1153. We hold that petitioner is not entitled to any deduction for a bankruptcy loss. It appears, however, that the $230.99 paid by petitioner to the Internal Revenue Service on account of license fees was sufficiently related to the petitioner's beer and wine business or the liquidation thereof to entitle petitioner to a deduction in that amount and we so hold. Walter F. Burrows, 38 B.T.A. 236 (1938). We are unable, however, to sustain petitioner's claim with respect to the $470.98 representing delinquent sales taxes. Petitioner testified that sales taxes were collected from his customers at least in part and we cannot determine on the record before us how much of the amount claimed represents payments made by petitioner as a collection agent and whether petitioner at any time included such collections in his income. 3. Dependency exemption. Petitioner's older daughter, Bonita, lived separate and apart from her father after March 1963 and fully supported herself during *259 1963. During January through June 1963, petitioner's younger daughter, Lynne Deborah, lived with him at 1842 Sherwood Road, Pontiac, Michigan, except for two weeks when she lived with an aunt. At the end of June 1963, petitioner removed himself from that address. From July 1, 1963 to December 31, 1963, Lynne Deborah boarded with a Mrs. Babcock at 2103 St. Joseph, Pontiac, Michigan. Petitioner lived separately from his daughter during that period. Petitioner paid more than one-half his daughter's expenses during the first half of 1963, including the two-week period when she lived with her aunt, and during the last half of 1963, when she lived separately from petitioner. Lynne Deborah did not have income of $600 or more during 1963. We hold that, on the record before us, petitioner contributed more than one-half of the support of his daughter Lynne Deborah and is entitled to claim her as a dependent under sections 151 and 152. 4. Head of household. Some of our findings in regard to the dependency deduction are applicable to this issue and are incorporated herein by reference. Section 1(b)(2)(A) of the Code provides that a head of household is a person who - maintains as his home *260 a household which constitutes for such taxable year the principal place of abode, as a member of such household, of - (i) a son, stepson, daughter, or step-daughter * * * The record herein shows that petitioner maintained only one place of abode at any one time during 1963. While he supported Lynne Deborah during the entire year, it is clear that she lived in the home of Mrs. Babcock during the latter six months of the year and that this was not a household maintained by petitioner as his home. Thus we do not have a two-household situation such as confronted the Court in Smith v. Commissioner, 332 F. 2d 671 (C.A. 9, 1964), reversing 40 T.C. 591 (1963). Nor does the record herein reveal any special circumstances from which we might reasonably assume that Lynne Deborah's absence was temporary and that she would return to the household maintained by petitioner. Cf. section 1.1-2(c)(2)(i), Income Tax Regs. Indeed, the record herein is devoid of evidence as to where petitioner lived during the last half of 1963 or whether his actual place of residence might have appropriately been considered a home or a household. Under these circumstances, *261 we hold that petitioner has not met the statutory requirement for a head of household and is therefore taxable at the rates applicable to a single taxpayer. Cf. Donald G. Teeling, 42 T.C. 671 (1964). Decision will be entered under Rule 50. Footnotes
1. All references are to the Internal Revenue Code of 1954.↩