DOUGLASS FENELEY and EMMA FENELEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Feneley v. Commissioner
Docket No. 939-74.
United States Tax Court
T.C. Memo 1975-290; 1975 Tax Ct. Memo LEXIS 78; 34 T.C.M. (CCH) 1258; T.C.M. (RIA) 750290; September 22, 1975, Filed James D. O'Connell, for the petitioners. Peter M. Ritteman, for the respondent. DRENNEN
MEMORANDUM OPINION DRENNEN, Judge: Respondent determined deficiencies in the individual Federal income tax of petitioners Douglass Feneley and Emma Feneley as follows: Taxable Year
Deficiency [1]
1970
$1,483.18
1971
1,479.82 The case was submitted as fully stipulated under Rule 122, Tax Court Rules of Practice and Procedure. The sole issue for determination is whether petitioners sustained a loss of $144,409.34 in their taxable year 1968 such that they are entitled, pursuant to section 172, I.R.C. 1954, [2] to carry forward, as net operating loss deductions in the taxable years 1970 and 1971, the amounts of $127,372.23 and $106,263.13, respectively. *80 All of the facts have been stipulated by the parties and are accordingly so found. The petitioners, Douglass and Emma Feneley, were husband and wife during the taxable years 1968 through 1972, in which period, and as of the date the petition herein was filed, they resided at Box 39, New Hudson, Mich. Their joint U.S. Individual Income Tax Returns, Forms 1040, for the calendar years 1970 and 1971 were prepared on the cash basis method of accounting and filed with the Central Service Center, Covington, Ky.
Douglass Feneley (hereinafter referred to as petitioner or Feneley where appropriate to indicate his status apart from Emma), is the son of George A. Feneley of Engadine, Mich., who died testate on July 10, 1958. The United States Estate Tax Return, Form 706, for the Estate of George A. Feneley was filed on or about December 8, 1959. Prior to his death, George A. Feneley had established and operated a sole proprietorship lumber business, the Feneley Lumber Co., located in Engadine, Mich.
The will of George A. Feneley was admitted to probate by the Probate Court for the County of Mackinac State of Michigan. Under the terms of the will a parcel of real estate was specifically *81 given to decedent's housekeeper, several parcels of land were specifically given to petitioner, and the remainder of the estate was given to decedent's sons, daughters, and a sister in the proportions set opposite their names. Petitioner was to receive 34 percent and the remaining 66 percent was divided among eight other children and a sister. A Federal estate tax return was filed for the estate which listed gross assets valued at $148,807.59 and liabilities totaling $33,898.39. Petitioner and four other children of decedent were listed as beneficiaries on the return. By order of the probate court filed on December 22, 1961, Feneley received real property (including a saw mill and related lots) with a value of $50,000 and personal property valued at $105,033.55 from his father's estate, subject to the unpaid liabilities of George A. Feneley in the amount of $50,161.84. [3] Feneley continued the operation of the Feneley Lumber Co. as a sole proprietorship with assets received from the estate during the period from his father's death until March 25, 1968, on which date Feneley, doing business as Feneley Lumber Co., filed a petition in bankruptcy with the United States District Court *82 for the Western Judicial District of Michigan, Northern Division, BK. No. 2250. The bankruptcy petition listed liabilities to creditors in the amount of $19,080.25. All Feneley's nonexempt assets, including all remaining assets received by him from the estate of George A. Feneley, were turned over to the trustee in bankruptcy who thereupon sold the assets and applied the proceeds to the creditor claims filed with and allowed by the court. The total assets and proceeds were insufficient to satisfy in full the administrative expenses and accepted creditor claims. On December 16, 1968, Feneley was granted a discharge by the bankruptcy court as to all unpaid claims. On April 7, 1971, Douglass and Emma Feneley filed a joint Amended *83 Individual U.S. Income Tax Return, Form 1040X, for the taxable year 1968 wherein they claimed a "business loss carryback" of $114,409.34. The amount of the claimed loss was computed by taking the full value of George A. Feneley's gross estate, $148,807.59, as stated on schedule O of the estate tax return, and reducing this amount by the amount of $4,398.25 which was received by the trustee upon liquidation of the assets to pay creditors' claims. No adjustment was made either in petitioners' prior returns or to the basis of Douglass Feneley in the assets acquired by him from the estate of George Feneley in the amended return for 1968 for diminution in value or disposition of any of those assets, nor was the "business loss carryback" applied to any other years prior to 1970. On their joint returns for taxable years 1970 and 1971, Douglass and Emma Feneley claimed operating loss carryovers in the respective amounts of $127,372.23 and $106,263.13. The loss carryovers claimed by petitioners for 1970 and 1971 are based solely on the claimed loss from going bankrupt in 1968 as set forth on the amended 1968 tax return, and do not relate to the actual business operations of petitioners during *84 the years 1968 through 1971. The Commissioner disallowed both loss carryovers in their entirety. The sole issue presented for our determination is whether petitioners Douglass and Emma Feneley are entitled, under section 172, to deduct as net operating loss carryovers in their taxable years 1970 and 1971 the amounts of $127,372.23 and $106,263.13, respectively. Resolution of the issue in turn depends on whether petitioners, as a result of going bankrupt in the taxable year 1968, sustained a deductible loss of $144,409.34, any part of which may be carried over and deducted as net operating losses in 1970 and 1971. We are somewhat circumscribed in our consideration of this issue because of the approaches taken by the parties in their briefs. Petitioners did not file an opening brief. In his brief respondent does not question the amount of the deduction claimed by petitioner or the basis on which it was computed; nor did he argue that the loss was not a business loss. See Charles R. Stuart,38 B.T.A. 1147. He simply argues that petitioner sustained no deductible loss under section 165 by virtue of turning his assets over to the trustee in bankruptcy and being adjudicated *85 a bankrupt, citing Frances M. Parkford,45 B.T.A. 461, affd. 133 F. 2d 249 (9th Cir. 1943); B & L Farms Co. v. United States,238 F. Supp. 407 (S.D. Fla. 1964). affd. per curiam 368 F. 2d 571 (5th Cir. 1966); Norris Bloomfield,52 T.C. 745; Homer A. Martin, Jr.,56 T.C. 1294; and Schilder v. United States, an unreported case ( N.D. Cal. 1971, 28 AFTR 2d 5440, 71-2 USTC par. 9595), in support thereof. In a reply brief petitioner attempts to distinguish the above cases by arguing that the loss claimed in this case is not a loss occasioned by the transfer of assets to the trustee in bankruptcy or the sale of those assets by the trustee to apply on creditors' claims. Instead, he argues the loss claimed here is the obvious loss in value of assets valued for estate tax purposes in the Estate of George A. Feneley as of 1958 at $148,807.59 and the value of those assets in 1968 which was manifested by the value placed on them by the bankruptcy court, or $4,398.25. Petitioner's argument proves nothing that would allow him a deductible loss for 1968. As a general matter, the allowance *86 of deductions "depends on legislative grace; and only as there is clear provision therefor can any particular deduction be allowed." New Colonial Ice Co. v. Helvering,292 U.S. 435, 440. Petitioner relies on section 165 for allowance of the deduction. Section 165(a) allows as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise, and section 165(b) provides that the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property. Losses of individuals are limited by section 165(c) to (1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit; and (3) casualty losses. Section 1.165-1, Income Tax Regs., provides that to be allowable as a deduction under section 165(a), a loss must be evidenced by closed and completed transactions, fixed by identifiable events. The only identifiable event to which petitioner can point to make his claimed loss a closed and completed transaction is the filing of a petition in bankruptcy and being adjudicated a bankrupt. *87 Thus, petitioner does not distinguish this case from the cases relied on by respondent. It seems clear that petitioner's argument of diminution in value of assets over a period of years might better support a deduction for depreciation over those years under section 167, rather than a loss under section 165 in 1968. Mere diminution in value does not predicate a deductible loss. White Star Line,20 B.T.A. 111. Furthermore, despite respondent's failure to argue it, petitioner has failed to carry his burden of proof of several elements necessary to support his claim of loss, see Welch v. Helvering,290 U.S. 111, which is not cured by the stipulation of facts. We have no evidence of which assets received by petitioner from the Estate of George A. Feneley were used in petitioner's business, what portion of the value of the gross estate was allocable to business assets, whether any of those assets might have been disposed of or fully depreciated before 1968, exactly what assets were transferred to the trustee and petitioner's basis therein, or even whether the diminution in value mentioned by petitioner was incurred in his trade or business or in transactions *88 entered into for profit. And with respect to the claimed operating loss carryovers to 1970 and 1971 with which we are directly concerned in this case, section 172 of the Code, which allows the net operating loss deduction, requires that an operating loss be first carried back and used to offset income of the 3 preceding years, and then carried forward and used to offset income of the 5 succeeding years. We have no evidence of whether petitioner had operating income for the years 1965, 1966, 1967, and 1969 which would serve to reduce any operating loss carryover from 1968 to which petitioner might be entitled in 1970 and 1971. The cases cited by respondent for support of the position he argues in this case, when read together, do support his argument, in the abstract at least, and without more require a decision in favor of respondent. In Frances M. Parkford,supra, the bankrupt taxpayer claimed a loss deduction for the difference in the cost to him of assets transferred to the trustee in bankruptcy and the amount realized on the sale of those assets by the trustee. The deduction was denied because no statute or court decision under which any such loss was allowable *89 could be found. The Board of Tax Appeals also pointed out that it was difficult to see how the taxpayer could have suffered a "loss" when, through the bankruptcy proceedings, he was discharged from liabilities greatly in excess of the actual cost of the property to him--which is not necessarily the situation here. In B & L Farms Co. v. United States,supra,the district court rejected the taxpayer's argument that its loss was "finalized" by the transfer of its assets to the trustees in bankruptcy. The circumstances in Norris Bloomfield,supra, were quite similar to the circumstances in this case, and this Court held that an operating loss carryback deduction from the year of taxpayer's bankruptcy was not allowable to taxpayer. In so deciding, the Court concluded that title to the assets of a bankrupt vests in the trustee in bankruptcy at the time the petition in bankruptcy is filed, and that the right to a loss carryback is property which vests in the trustee and any loss on the sale of assets in the bankruptcy proceeding is the loss of the trustee and is not directly available to the bankrupt. The Court also pointed out that neither the *90 filing of a petition in bankruptcy nor the bankruptcy proceedings themselves necessarily entitle the bankrupt to loss deductions, and since the value of the taxpayer's assets as determined in the bankruptcy proceedings were insufficient to pay his liabilities, the decline in value of his assets must have developed in his pre-bankruptcy past with the result that whatever loss was created thereby, including the carryback potential, passed to the trustee. In a footnote the Court noted that it was not called upon to decide whether any unused loss available for carryover in post-bankruptcy years could be allowed to the bankrupt. Homer A. Martin, Jr.,supra, did however involve a carryover of a loss to post-bankruptcy years, and on facts similar to those in this case the loss carryover was not allowed. The Court stated at p.1299: "Moreover, the rule is settled that a deductible loss under section 165 is not sustained when a taxpayer delivers his assets to a trustee in bankruptcy," citing the Court of Appeals opinion in the Parkford case, supra.
Petitioner also argues that the fact that the decline in value of his assets is evidenced by events involving the *91 United States Government, albeit in different representative capacities (the estate tax valuation and the bankruptcy court valuation), estops respondent from disallowing the loss. Quite simply, the instant case presents none of the requisite elements of estoppel. See Commissioner v. Sunnen,333 U.S. 591. In light of the authorities cited herein, and for the reasons recited herein, we conclude that petitioners incurred no deductible loss in 1968 by virtue of the bankruptcy proceedings or otherwise. [4] Accordingly, petitioners are not entitled to deduct as net operating loss carryovers in the taxable years 1970 and 1971 the amounts of $127,372.23 and $106,263.13, respectively. Decision will be entered for the respondent.
Footnotes
1. In computing the asserted deficiency for 1970, the Commissioner allowed a standard deduction of $1,000 and a deduction, in the amount of $1,250, for two personal exemptions. Similarly, the 1971 deficiency reflects a $1,464.93 standard deduction and two personal exemptions amounting to $1,350. ↩
2. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
3. This fact was stipulated. No records of the probate proceedings were offered in evidence and we have no means of either reconciling this statement with the will or the estate tax return or of knowing just what assets were distributed to Feneley. The parties agree that the liabilities were either paid by Feneley on or before March 25, 1968, or included among the liabilities set forth in the bankruptcy petition filed by Feneley on March 25, 1968.↩
4. There is no claim that petitioner suffered an operating loss in his business prior to his bankruptcy in 1968 that would be available as a carryover in 1970 or 1971.↩