NORMAN E. SCOTT AND LAURA A. SCOTT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Scott v. Commissioner
Docket No. 4565-77.
United States Tax Court
T.C. Memo 1979-396; 1979 Tax Ct. Memo LEXIS 133; 39 T.C.M. (CCH) 240; T.C.M. (RIA) 79396; September 24, 1979, Filed *133 Held, petitioner, a cash method taxpayer, did not suffer a net operating loss due to debts discharged in bankruptcy. Petitioner was not entitled to a credit against the deficiency for taxes withheld in 1975 because credit was previously given against withheld but undeposited employment taxes for prior years. Norman E. Scott, pro se. Eric S. Chofnas, for the respondent. IRWIN
*134 MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined a deficiency of $1,912.93 in petitioners' Federal income tax for 1975. Due to a concession by respondent, the only issues remaining for our decision are: (1) whether petitioners are entitled to deduct under section 162 [1] certain debts discharged in bankruptcy and (2) whether petitioners are entitled to an income tax credit for taxes withheld in 1975. FINDINGS OF FACT This case came to trial without a stipulation of facts. Certain exhibits were stipulated and are incorporated herein. Norman E. and Laura A. Scott, husband and wife, filed their 1975 joint income tax return with the Internal *135 Revenue Service Center at Chamblee, Georgia, using the cash method of accounting. Petitioners resided in Lithia Springs, Georgia when they filed their petition in this case. Because Laura A. Scott is a petitioner herein by reason of her filing a joint return, references to petitioner are to Norman E. Scott. In October 1973, petitioner opened a service station in Douglasville, Georgia. Petitioner opened a second service station in Douglasville in February 1974. Petitioner also purchased two wreckers with which he and his two sons conducted a wrecker service in connection with the service stations. These businesses were conducted as sole proprietorships and used the cash method of accounting. Petitioner's businesses soon began to encounter financial difficulties. Due to large operating expenses and the 1973-1974 fuel embargo (and resultant fuel allocation), petitioner was forced to close the first service station in June 1974. The second service station and the wrecker services were closed in December 1974. In order to provide more funds for these businesses, petitioner obtained employment as a bus driver for the Metro-politan Atlanta Rapid Transit Authority (MARTA) in *136 October of 1974. Petitioner continued to work for MARTA after the businesses were closed. Petitioner is a retired Lieutenant Colonel in the United States Army and receives military retirment pay in addition to his salary from MARTA. Petitioners had $2,490.91 in taxes withheld in 1975. On March 5, 1975, petitioner filed a voluntary petition in bankruptcy in the United States District Court for the Northern District of Georgia. Petitioner listed assets totalling $1,705.13 (including property exempt from creditors' claims under the Constitution of the State of Georgia) and debts totalling $119,778.51. On September 9, 1975, the trustee in bankruptcy reported to the District Court that he had received no property from petitioner nor paid any money to creditors on account of petitioner's estate. Petitioner was discharged in bankruptcy on September 30, 1975. The District Court thereafter approved the trustee's report and closed petitioner's bankruptcy estate. No actual payment has ever been made to any of petitioner's pre-bankruptcy creditors. On August 4, 1975, petitioner brought all of his records pertaining to the businesses to the respondent's Atlanta office for a conference. *137 The purpose of the conference was to discuss petitioner's liability for the businesses' employment taxes for 1973 and 1974. [2] Petitioner retained the records in his car after the conference and many of the records were lost or destroyed in an auto accident that occurred on August 6, 1975. On petitioner's 1975 return, a loss of $64,746.32 was claimed as a result of his bankruptcy. Petitioner thereafter filed amended returns for 1972, 1973, and 1974 carrying back the 1975 loss and seeking refunds for those years. In the notice of deficiency, respondent disallowed the claimed loss and determined a deficiency for 1975. OPINION Petitioner claims a net operating loss of $64,746.32 due to his voluntary bankruptcy in 1975. [3] The claimed loss arises from debts incurred in several businesses of petitioner which failed in 1974. *138 Petitioner contends that the discharge in bankruptcy entitles him to a deduction even though no payments were ever made on the debts. Respondent contends that actual payment in necessary for a cash method taxpayer to deduct an otherwise allowable expenditure. Petitioner is a cash method taxpayer. Under section 461(a), an allowable deduction shall be taken for the proper taxable year under the accounting method used by the taxpayer. A cash method taxpayer can deduct an allowable deduction only in the taxable year when paid, section 1.461-1(a)(1), Income Tax Regs. Petitioner's bankruptcy estate contained no assets and no payments were ever made to any of petitioner's creditors. The law is well settled that actual payment is required for a cash basis bankrupt to deduct his debts. B & L Farms Co. v. United States,238 F.Supp. 407 (S.D. Fla. 1964), affirmed per curiam 368 F.2d 571 (5th Cir. 1966), cert. denied 389 U.S. 835 (1967), Parkford v. Commissioner,133 F.2d 249 (9th Cir. 1943), Mueller v. Commissioner,496 F.2d 899 (5th Cir. 1974). In Dowd v. Commissioner,68 T.C. 294 (1977), *139 a cash method taxpayer filed a voluntary petition in bankruptcy in 1963. In 1969, the petitioner paid 15 percent of each debt owed to his trade creditors.In allowing a deduction under section 162 for 1969, we stated: It is fundamental to the cash basis method of accounting that the mere liability for payment is insufficient and a deduction for a business expense can only be allowed in the taxable year in which payment is actually made. Helvering v. Price,309 U.S. 409 (1940), sec. 1.461-2(a)(1), (Sic), Income Tax Regs. (68 T.C. at 300-301). We hold that petitioner is not entitled to deduct any of his debts discharged in bankruptcy. [4]
Petitioner claims that the deficiency of $1,912.93 should be offset by a credit for $2,490.91 (the amount withheld from petitioners in 1975). On April 15, 1976, this amount was properly *140 credited to petitioner's delinquent employment tax liability for 1973 and 1974, pursuant to section 6402(a). [5] Accordingly, petitioner is not entitled to a credit for his 1975 withholding. [6]
*141 Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the taxable year in issue.↩
2. The issue of petitioner's liability for employment taxes was raised in his petition. Respondent's pre-trial motion to dismiss for lack of jurisdiction was granted with respect to the employment taxes.↩
3. It is far from clear from the petition whether petitioner relied on section 162 or section 165 (or both) in claiming his loss for 1975. We have assumed that petitioner relied on section 162. The result in this case would not differ under section 165.↩
4. The sum of the deductions claimed by petitioner is actually $52,632.01, not $64,746.32. Respondent did not raise this discrepancy in the deficiency but because of our holding, the difference is not material. Petitioner included in these deductions $6,704.47 in Federal taxes owed, clearly a nondeductible item, section 275.↩
5. SEC. 6402. AUTHORITY TO MAKE CREDITS OR REFUNDS. (a) General Rule.--In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall refund any balance to such person. ↩
6. Petitioner also contends that respondent caused the loss of many of the relevant business records. These records were kept in petitioner's car after his return from a scheduled conference with an Internal Revenue Service employee. The Internal Revenue Service employee failed to keep the appointment and two days later, petitioner was involved in an auto accident. While many of petitioner's records may well have been lost or destroyed, these records would, by petitioner's account, only have established the existence of the debts and not their actual payment. Thus the existence of such records would not change the result we reach.↩