T.C. Memo. 2007-271

UNITED STATES TAX COURT

SARA J. BURNS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11924-04.                    Filed September 12, 2007.

<u>John W. Sunnen</u>, for petitioner.

<u>Erin K. Huss</u>, for respondent.

MEMORANDUM OPINION

CARLUZZO, <u>Special Trial Judge</u>:  In a notice of deficiency dated April 13, 2004, respondent determined a $41,723 deficiency in petitioner's 1999 Federal income tax.  The issue for decision is whether a reward payment (the reward) petitioner was entitled to receive in 1999 is includable in her income for that year even

though in a bankruptcy proceeding initiated by petitioner the reward was determined to be subject to the claim of a creditor.

## Background

Some of the facts have been stipulated and are so found. At the time the petition was filed petitioner resided in California.

On September 24, 1991, petitioner sued her former employer, Family Practice Associates of San Diego (FPASD), for Medicare fraud in what is commonly referred to as a qui tam action, filed under the False Claims Act, 31 U.S.C. sec. 3729 (2000), in the U.S. District Court for the Southern District of California (the whistle-blower case). The whistle-blower case was settled pursuant to an agreement between the United States and FPASD in which FPASD agreed to pay $2 million to the United States in four annual installments, beginning in 1996. Under the statutory scheme, petitioner was entitled to a reward of 29 percent of the $2 million settlement, or $580,000, also payable over a 4-year period beginning in 1996.

Petitioner received the first three installment payments in due course. In 1998, petitioner was sued in a California court (the lawsuit) by Bradley Proulx (Proulx), a private investigator who petitioner had hired to assist her in connection with the

initiation, investigation, and prosecution of the whistle-blower case. According to Proulx, petitioner had failed to pay him what he was due pursuant to the contract between them.[1] As a result of the lawsuit, in October 1998 Proulx was awarded a $231,463 judgment against petitioner. In accordance with California law, following the judgment Proulx initiated proceedings that gave rise to a lien on petitioner's nonexempt personal property, including, as it turned out, the proceeds from the reward.

Aware that the fourth installment of the reward was soon due and potentially subject to the above-referenced lien, on January 25, 1999, petitioner initiated a voluntary chapter 13 bankruptcy proceeding in the U.S. Bankruptcy Court for the Southern District of California (the first bankruptcy proceeding). On February 2, 1999, Proulx filed an Ex Parte Application for Order to Pay Trustee (the ex parte application) in the first bankruptcy proceeding seeking an order from the bankruptcy court authorizing the U.S. Government to pay the chapter 13 trustee the final reward installment due petitioner from the whistle-blower case.

---

[1] The terms of the contract are unclear but apparently involved a contingency fee based upon petitioner's recovery. If the contract was reduced to writing, the document was not made part of the record in either the lawsuit or this proceeding.

On February 4, 1999, petitioner filed an opposition to Proulx's ex parte application. Petitioner argued that the relief sought by Proulx in the ex parte application was improper for various reasons but offered to place the final reward installment then due to her from the U.S. Government into a segregated, interest-bearing special attorney-client trust account with her bankruptcy counsel's firm, Robbins & Keehn (the trust account), under the conditions that there would be no withdrawals from the trust account without: (1) An order from the bankruptcy court; or (2) the consent of Proulx.

On February 22, 1999, the bankruptcy court directed the U.S. Government to make the final installment of petitioner's reward and further

> ordered that * * * [petitioner's bankruptcy attorney and his firm] are hereby instructed to place the funds from * * * [the reward] into * * * [the trust account]. These funds may not be disbursed without further order of this court. Further, in the event that * * * [petitioner] dismisses her Chapter 13 action, the funds shall remain in * * * [the trust account] pending further order of this court.

The reward was paid to petitioner by U.S. Treasury check dated February 26, 1999. The check represented the fourth installment of the reward due petitioner as a result of the settlement from the whistle-blower case. The check was issued to petitioner "c/o Charles F. Robbins Esq., Robbins & Keehn, 530 B Street, Ste. 2400, San Diego, CA 92101". Petitioner endorsed the

check and wrote "for deposit only * * * [trust account]" on the back. During 1999, the $148,680 in settlement proceeds earned $1,299 in interest while on deposit in the trust account.

Throughout the pendency of the first bankruptcy proceeding, Proulx, through actions taken in that proceeding as well as actions taken in California courts, attempted to collect on his judgment against petitioner. Petitioner, at all times, resisted his efforts.

On August 13, 1999, petitioner filed for chapter 7 bankruptcy (the second bankruptcy proceeding). Had petitioner not filed the second bankruptcy petition, petitioner might have been required to pay over the reward proceeds to Proulx pursuant to a State court order. Pursuant to the second bankruptcy proceeding, the reward proceeds were transferred from the trust account to Richard Kipperman (Kipperman), the chapter 7 trustee. On September 4, 2001, Kipperman initiated an adversary action against Proulx in order to determine whether Proulx's lien attached to the reward proceeds. A series of proceedings ultimately determined that it did. As it turned out, the conflict between Proulx and petitioner would not be resolved until the middle of 2003.

Taking into account an extension, petitioner's 1999 Federal income tax return was timely filed. Receipt of the $148,680 reward is disclosed on line 21 of that return. The amount of the

reward is offset by $151,489 because, according to an explanation contained on the return, petitioner "did not constructively received [sic] these amounts".  The amount reported on line 21 of petitioner's 1999 return is a net loss of $2,809.

In the notice of deficiency that forms the basis for this case, respondent proceeded as though the reward ($148,680) and the interest earned on that amount while it was on deposit in the trust fund ($1,299) were omitted from the income reported on petitioner's return.[2]  Other adjustments made in the notice of deficiency have been agreed to by the parties and need not be addressed.  Furthermore, respondent now concedes that to the extent that the reward is includable in petitioner's 1999 income, she is entitled to a deduction in the same amount.  See secs. 212, 461(f).[3]

### Discussion

Absent the complications that followed from Proulx's contractual claim against petitioner, the reward would be includable in petitioner's 1999 income, and neither party

---

[2] Presumably, this case could be resolved by addressing petitioner's entitlement to what is, in effect, a $151,489 deduction, as the $148,680 reward is, in effect, included in the income reported on petitioner's return.  In fairness to the parties, however, the Court will address the issues as framed by the pleadings and briefs.

[3] Unless otherwise indicated, section references are to the Internal Revenue Code in effect for 1999, and Rule references are to the Tax Court Rules of Practice and Procedure.

suggests otherwise.  Secs. 61, 451(a); <u>Commissioner v. Glenshaw Glass Co.</u>, 348 U.S. 426 (1955); <u>Roco v. Commissioner</u>, 121 T.C. 160, 164-165 (2003) (payment made by the U.S. Government to the taxpayer in a qui tam action is a reward and, as such, is includable in gross income); sec. 1.61-2(a)(1), Income Tax Regs. According to petitioner, however, the reward is not includable in her 1999 income because she did not "constructively receive" the reward during that year.  In support of her position, petitioner argues that because the distribution of the proceeds of the reward was subject to an order of the bankruptcy court during 1999, she could not exercise the necessary dominion and control over the reward to render it includable in her income for that year.  See sec. 1.451-2(a), Income Tax Regs.[4]

At the outset we should note that, as a general explanation of the topic, we agree with petitioner's discussion of the doctrine of constructive receipt contained in her briefs.  We

---

[4] The term "constructive receipt" is defined in sec. 1.451-2(a), Income Tax Regs., as follows:

(a) General rule.  Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions.

further agree that petitioner did not "constructively" receive the reward in 1999. Instead, as we view the situation, she actually received the reward during that year.[5] Petitioner's reliance upon the doctrine of constructive receipt ignores the simple fact that it was petitioner who volunteered[6] to place the reward in the custody of the bankruptcy court. The "dominion and control" over the reward implicit in her decision to do so completely undermines petitioner's claim that she lacked any such dominion or control over the reward. See Sullivan v. Commissioner, T.C. Memo. 1999-341. For what it's worth, we think it also important to note that the doctrine of constructive receipt, in general, addresses questions regarding when, not whether, income is realized by a cash basis taxpayer. Taken to its extremes, petitioner's argument would suggest that because Proulx ultimately prevailed, the reward would never be includable in her income. Such a conclusion is wholly inconsistent with the

_____

[5] Although not expressly addressed by the parties, it is clear from their respective positions that petitioner computed her 1999 Federal income tax liability in accordance with the cash receipts and disbursements method of accounting (cash basis). Sec. 1.446-1(c)(1)(i), Income Tax Regs., provides, in part, as follows: "Generally, under the cash receipts and disbursements method in the computation of taxable income, all items which constitute gross income * * * are to be included for the taxable year in which actually or constructively received."

[6] We appreciate petitioner's point that it was a hard choice. Nevertheless, it was her choice.

principle that a taxpayer does not escape taxation on what is otherwise the taxpayer's income merely because the income was paid directly to the taxpayer's creditor. <u>Helvering v. Horst</u>, 311 U.S. 112 (1940); <u>Parkford v. Commissioner</u>, 133 F.2d 249, 251 (9th Cir. 1943).[7]

Furthermore, we think it appropriate to note that, contrary to petitioner's arguments, the above-described bankruptcy proceedings are, for the most part, irrelevant. The bankruptcy court did not focus on the nature of the reward as an item of income but rather as an asset available as a source of payment to petitioner's creditors. See <u>Parkford v. Commissioner</u>, <u>supra</u> at 251.

Similarly, petitioner's reliance on <u>Cold Metal Process Co. v. Commissioner</u>, 17 T.C. 916 (1951), affd. per order 53-1 USTC par. 9135 (6th Cir. 1952), <u>Barnette v. Commissioner</u>, T.C. Memo. 1992-371, affd. without published opinion 41 F.3d 667 (11th Cir. 1994), <u>Stone v. Commissioner</u>, T.C. Memo. 1984-187, <u>Collins v. Commissioner</u>, T.C. Memo. 1972-170, and <u>Hannaford v. Commissioner</u>,

---

[7] Curiously, and if only by implication, petitioner recognizes this principle as she argues in the alternative that to the extent that the reward is includable in her income, it should be includable in her 1998 income because that was the year Proulx's lien arose. A creditor's collection rights against a taxpayer's property, however, say little about when a cash basis taxpayer realizes income.

T.C. Memo. 1960-78, is misplaced.[8]  The taxpayer in Cold Metal
Process Co. was on the accrual method of accounting, and any
precedents established by that case simply have no application to
the issue in dispute here.  In each of the other cases there was
a question regarding whether the taxpayer was entitled to receive
the disputed income.  Unlike the taxpayers in those cases,
petitioner was clearly entitled to the reward in 1999; the only
question at the time was how much of the reward she would be
entitled to retain.

The reward is includable in petitioner's 1999 income, and
respondent's adjustment to that end is sustained.  We need not
discuss the treatment of the $1,299 interest earned on the reward
proceeds while they were on deposit in the trust fund because the
parties have agreed on that treatment.  Finally, as noted above,
respondent now agrees that petitioner is entitled to a
miscellaneous itemized deduction in an amount equal to the amount
includable in her income, and petitioner agrees that the
imposition of the section 55 alternative minimum tax that results
is computational.

---

[8] Stone v. Commissioner, T.C. Memo. 1984-187, might very
well apply to the interest earned on the reward proceeds while
they were on deposit in the trust account.  However, the parties
have by their agreement removed the treatment of the interest
from the Court's consideration.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.