LUTHER E. SMITH AND LAWANDA N. SMITH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smith v. Commissioner
Docket No. 15886-93.
United States Tax Court
T.C. Memo 1995-406; 1995 Tax Ct. Memo LEXIS 409; 70 T.C.M. (CCH) 483; August 22, 1995, Filed *409 Decision will be entered under Rule 155. Luther E. Smith and Lawanda N. Smith, pro sese. Steven B. Bass, for respondent. KORNER, Judge KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined deficiencies in and an addition to petitioners' Federal income taxes for the years and in the amounts as follows: Addition to Tax
Year
Deficiency
Sec. 6651(a)(1)
1987
$ 79,252
--
1988
7,004
$ 350
All statutory references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. After concessions, the issues for decision are: (1) Did petitioner husband's separate and community property, and deductions and losses attributable to such property, become property of his bankruptcy estate upon the filing of a chapter 11 bankruptcy petition? We hold that they did. (2) Are petitioners entitled to deduct one-half of the disallowed losses incurred during 1987 and 1988 based on petitioner wife's community property interests in the same? We hold that they are not. (3) Are petitioners entitled to a deduction for worthless stock in First National *410 Bank of Irving in 1986, although a deduction for the same was taken in 1988? We hold that they are not. (4) Did petitioners have a basis of $ 491,642 in the stock of TPI Industries, Inc. (TPI), despite having reported on their 1987 income tax return that the basis was $ 20,000? We hold that they did not. (5) Are petitioners entitled to a worthless stock deduction or a nonbusiness bad debt deduction attributable to the Future Communications Network Co., Ltd. (FCNC), prior to petitioner husband's bankruptcy filing? We hold that they are not. (6) Are petitioners liable for an addition to tax under section 6651(a) for an untimely filing of their 1988 Federal income tax return? We hold that they are. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners resided in Austin, Texas, at the time they filed their petition. On August 3, 1987, petitioner Luther E. Smith filed a chapter 11 bankruptcy petition. On September 12, 1988, petitioner Lawanda N. Smith filed a chapter 11 bankruptcy petition. On December 7, 1988, petitioners' bankruptcy cases were consolidated. *411 Petitioners reported all items of income and loss on their joint personal Federal income tax returns for the 1987 and 1988 tax years. Petitioners were not aware that separate Federal income tax returns were required to be filed for their bankruptcy estate, nor were any filed. Petitioners reported on their joint return for 1987 two long-term capital gains in the amounts of $ 313,350 and $ 120,000 on January 20, 1987, and February 12, 1987, respectively. Respondent disallowed various losses and deductions claimed on that return and on petitioners' joint return for 1988, determining that these items were properly allowable, if at all, to the bankruptcy estate. The disallowances gave rise to increases in petitioners' income tax of $ 79,252 and $ 7,004 for 1987 and 1988, respectively. Specifically, petitioners claimed losses from real estate rentals for $ 25,274 in 1987 and $ 67,129 in 1988. Respondent disallowed $ 10,497 of the loss in 1987, and disallowed the entire loss in 1988. The $ 10,497 reduction in the 1987 loss represents the pro rata portion of the loss for the period the bankruptcy estate was deemed to have held title to the property (i.e., 151 days/365 days x $ 25,274). *412 Petitioners claimed partnership losses of $ 132,835 and $ 1,016,906 for the tax years 1987 and 1988, respectively, and a $ 100,000 small business loss in 1988. Also in 1988, petitioners reported a net capital loss in the amount of $ 2,457,769, and deducted a capital loss of $ 3,000 from their 1988 ordinary income. Respondent denied all of these losses, determining that they belonged to the bankruptcy estate. OPINION Petitioners have not disagreed with respondent's specific determinations, but rather have advanced four arguments as to why there should be no tax liability. First, petitioners claim that stock they owned in First National Bank of Irving became worthless in 1986 when the bank went into receivership, and not in 1988 when they originally claimed a deduction for worthless stock. Second, petitioners claim that petitioner wife was entitled to one-half of the alleged 1986 loss of $ 1,111,111 attributable to the stock in the First National Bank of Irving. Petitioners argue that under section 541 of the bankruptcy code, petitioner wife's interest in community property would not enter the estate of petitioner husband until 1988 when petitioner wife filed for bankruptcy. Petitioners *413 argue that petitioner wife's share of the deduction, $ 555,555, was mistakenly reported on their 1988 tax return, whereas it should have been reported on the 1986 tax return. Third, petitioners argue that their 1987 income tax return mistakenly listed their cost of purchase of stock in TPI as $ 20,000 when it should have been listed as $ 491,642, which is the paid in capital and the purchase price. At trial, petitioner testified that the corporate books and the tax returns of TPI showed the capital in excess of $ 400,000. Petitioner offered no evidence to show the contributions to capital with respect to TPI other than a balance sheet showing total stockholder equity to be $ 327,592. If such basis is found to be correct, it would create long-term capital loss of $ 158,292, as opposed to the long-term capital gain of $ 313,350 as reported on their 1987 return. Fourth, petitioners alleged that they founded and funded FCNC, and that the venture became worthless in 1986, prior to petitioner husband's filing for bankruptcy. FCNC filed a Federal income tax return for the 1987 tax year. FCNC never earned any income, but it did incur expenses which gave rise to losses. The business purpose *414 of FCNC was to construct microwave towers and lease microwave tower sites. Such purpose was never actualized as funding could not be obtained. 1. Effect of Bankruptcy on Petitioner Husband's Property
Upon the filing of a petition for chapter 7 or 11 bankruptcy, the bankruptcy estate is deemed to become another taxable entity, separate from the individual debtor. Sec. 1398; Bloomfield v. Commissioner, 52 T.C. 745, 750 (1969), supplemented by 54 T.C. 554 (1970); In re Pflug, 146 Bankr. 687, 689 n.4, (Bankr. E.D. Va. 1992). The taxable income of the estate generally is taxable in the same manner as for an individual. Sec. 1398(c)(1). If an estate receives gross income in an amount greater than the sum of the exemption amount, plus the basic standard deduction, it must file a return. Sec. 6012(a). The gross income of the estate for each taxable year is any income to which the bankruptcy estate is entitled as determined under the bankruptcy code, while the debtor's gross income is generally any income from services performed by the debtor after commencement of the case, and not included in *415 the income of the estate. Bankruptcy Act, 11 U.S.C. sec. 541(a) (1978); sec. 1398(e). The bankruptcy estate is composed of all property of the debtor at the commencement of the bankruptcy case. 11 U.S.C. sec. 541(a). The estate will succeed to any tax attributes of the debtor as of the commencement of the bankruptcy case. Sec. 1398(g). Any deductions available to the estate are not available to the individual debtor. Petitioner husband filed for bankruptcy on August 3, 1987. At that time, a bankruptcy estate was formed, and it was composed of all assets which were community property. Petitioner wife filed for bankruptcy September 12, 1988. The two individual estates were consolidated on December 7, 1988. If any of these estates earned gross income that was above the exemption amount and the basic standard deduction, an income tax return must be filed. Because the notice of deficiency was issued to petitioners individually, and they filed their petition with this Court as individuals, we make no determination as to whether petitioner husband's estate, petitioner wife's estate, or their consolidated estate was required *416 to file a return. Rule 13(a). Whatever the answer to that question, petitioners have not shown that their own gross income was so small as to relieve them of the obligation to file income tax returns for the years in which they were in bankruptcy. Petitioners have the burden of overcoming the presumption of correctness afforded respondent in the notice of deficiency. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Deductions are a matter of legislative grace, and petitioners bear the burden of proving they are entitled to any deductions claimed on their return. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Partnership Losses
Petitioners claimed losses in 1987 and 1988 from interests in various partnerships, all of which held interests in real property. Respondent disallowed such deductions, determining that they are properly deductible, if at all, on the return of the bankruptcy estate. Respondent argued that the bankruptcy estate is entitled to all losses of the partnerships for the tax year 1987. Respondent also argued that, pursuant to section 1398(f), the transfer of the partnership *417 interests to the bankruptcy estate is not to be treated as a sale, exchange, or liquidation of a partnership interest, which would require that the taxable year close for that partner under section 706(c). Section 1398(f) provides that a transfer of an asset to the estate will not be treated as a disposition for Federal tax purposes. We agree with respondent that under section 1398(f) the transfer of the partnership interest to a bankruptcy estate should not be treated as a sale, exchange, or liquidation. Petitioners have not introduced any evidence to establish the partnership losses. They have not established that any possible losses were incurred prior to petitioner husband's filing for bankruptcy. Furthermore, petitioners have not alleged any error on the part of respondent, nor have they advanced any argument as to why the partnership losses are not deductible by the bankruptcy estate. We hold therefore that any partnership losses, incurred after bankruptcy, are unavailable to petitioners. Small Business Loss
Petitioners claimed a small business loss of $ 100,000 on their individual Federal income tax return for 1988. Such deduction was determined by respondent to be *418 properly deductible by the bankruptcy estate. Petitioners have presented no evidence to suggest that such determination is erroneous, or that they are entitled to the $ 100,000 deduction from gross income. Accordingly, we hold for respondent on this issue. Nonbusiness Bad Debt Expense
Petitioners claimed bad debt expenses as short-term capital losses on Schedule D of their 1987 return in the amounts of $ 975,062, $ 307,780, and $ 308,850 on account of TexPaint, Inc., New Mexico Telephone Exchange, Inc., and FCNC, respectively. Petitioners also claimed $ 12,479 on their Schedule D as a short-term capital loss attributable to partnerships, S corporations, or fiduciaries. Respondent disallowed $ 1,601,171 of the total amount claimed as a short-term capital loss. Petitioners have not contested respondent's determinations with respect to the deductions claimed on account of TexPaint, Inc., New Mexico Telephone Exchange, Inc., or the short-term capital loss attributable to partnerships, S corporations, or fiduciaries. We deem these points conceded by petitioners and hold for respondent with respect to them. We will address petitioners' arguments as to FCNC below. Net Capital *419 Losses
Petitioners claimed on their 1988 income tax return a net capital loss in the amount of $ 2,457,769. Respondent disallowed such loss. Petitioners have not addressed this argument and have not introduced any admissible evidence which would show that respondent is in error. We hold for respondent on this issue. 2. Petitioner Wife's Community Interest in the Deductions
Petitioners have claimed that because petitioner wife did not file for bankruptcy until 1988, she was entitled to one-half of the deductions otherwise available to petitioner husband's bankruptcy estate by virtue of the fact that she held a community property interest in such deductions, or that she held a community interest in the assets which gave rise to the deductions. Petitioners claim that the loss attributable to the First National Bank of Irving was in the amount of $ 1,111,111, and that petitioner wife is entitled to $ 555,555 of that loss. Petitioner quoted parts of bankruptcy code sec. 541(a) at trial, and then concluded that those passages made it clear that petitioner wife's community property would not go into his bankruptcy estate, but would be available to petitioner wife. 11 U.S.C. section 541 *420 (a) provides: (a) The commencement of a case * * * creates an estate. Such estate is comprised of all of the following property, wherever located and by whomever held: (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case. (2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is-- (A) under the sole, equal, or joint management and control of the debtor; * * * [Emphasis added.]
Subsections (b) and (c)(2) of section 541 identify property that is not included in the estate. At trial, petitioners did not allege that those subsections apply, and accordingly we do not analyze them. All community property of a debtor's spouse that is under the sole, equal, or joint management and control of the debtor will be included in the debtor's estate. We must examine State law to ascertain what is community property. Butner v. United States, 440 U.S. 48 (1979); In re Knobel, 167 Bankr. 436, 440 (Bankr. W.D. Tex. 1994). Texas is a community property *421 State, which means that property is classified as separate or community. Tex. Const. art. XVI, sec. 16. In Texas, marital property is presumed to be community property absent a showing that property is separate property, which is any property owned by a spouse before marriage, acquired during marriage by gift, devise, or descent, or is the recovery for personal injuries. Tex. Fam. Code Ann. sec. 5.01 (West 1993). Community property is considered subject to the joint management, control, and disposition of the husband and wife, unless either there is an agreement to the contrary, or the property is shown to be from personal earnings, revenue from separate property, recoveries for personal injuries, or the increase or mutations of such separate property. Tex. Fam. Code Ann. sec. 5.22 (West 1993). Petitioners have not introduced any evidence nor any testimony to support the position that any property was the separate property of petitioner wife. Petitioners did not allege or prove that there was an agreement that marital property was separate as opposed to community, or that marital property was derived from petitioner wife's personal earnings, earnings of her separate property, or *422 recoveries for personal injuries sustained by her. In light of the absence of any testimony or evidence, we conclude that under Texas law all property held by petitioners during the years in issue was community property under joint management and control, and therefore all such property became part of the estate when petitioner husband filed for bankruptcy in 1987. 3. First National Bank of Irving
Petitioners alleged at trial and on brief that stock in the First National Bank of Irving became worthless in 1986, when the bank went into receivership, and not in 1988, when they originally claimed the deduction. No evidence was introduced to support the $ 1,111,111 claimed deduction. [1] There is also no evidence that establishes a basis in any stock held, or even that stock was held. On Schedule D of their 1988 income tax return, there is a loss shown attributable to "bank stock" of $ 272,546. Petitioners have failed to explain the discrepancy between this amount and the $ 1,111,111 loss allegedly reported. There was a letter that showed that the bank was declared insolvent and went into receivership in 1986, but without having first established that they held stock in such bank, *423 such letter will not establish that they are entitled to a deduction. We therefore hold that petitioners have failed to establish that they are entitled to a worthless stock deduction for 1986 with respect to the First National Bank of Irving. 4. Stock of TPI
On Schedule D of their 1987 income tax return, petitioners reported a long-term capital gain from the sale of TPI stock. Such stock was reported to have been purchased on January 1, 1986, for $ 20,000 and sold on January 20, 1987, for $ 333,350, producing a long-term capital gain of $ 313,350. Petitioners alleged that the reported purchase price did not reflect their paid in capital in the amount of $ 491,642, and therefore they now seek to amend such amount. To establish the paid in capital amount, petitioners introduced the corporate returns *424 of TPI for 1985 through 1988. Total stockholder equity on those returns was reported as $ 175,000, $ 359,366, $ 39,764, and zero for those years, respectively. On Schedule L of the 1987 corporate income tax return of TPI, the "paid in capital" was listed as $ 491,642. Additionally, common stock was reported as $ 20,000, and unappropriated retained earnings were reported as ($ 471,878). When considered together, the total stockholder equity shown is $ 39,764. Petitioners failed to substantiate any of these figures, but even if they had they would have proven that the stockholder equity was $ 39,764, far short of the alleged $ 491,642. We hold that petitioners have failed to establish that they are entitled to a deduction with respect to the TPI stock. 5. FCNC
We must decide whether petitioners have met their burden in proving the losses attributable to FCNC. Petitioners argue that the debt pertaining to FCNC was erroneously claimed in 1987, when it should have been claimed earlier. Petitioners have introduced no exhibits whatsoever at trial with regard to this debt. Petitioner alleged at trial that FCNC had financial difficulty during 1986 and 1987, that one of its general *425 partners filed for bankruptcy in 1988, and that the company lost its construction license in 1987. Even if all of these allegations were sufficiently established at trial, and they were not, they only indicate that FCNC may or may not have become insolvent prior to petitioner husband filing for bankruptcy. Petitioners have failed to show that they are entitled to any deduction with respect to FCNC, and accordingly we hold for respondent. 6. Timely Filing of Petitioners' 1988 Income Tax Return
In the notice of deficiency, respondent determined that petitioners' joint income tax return for 1988 was not timely filed, and that the addition to tax for an untimely filing under section 6651(a) is applicable. Petitioners' income tax return was due, after extensions, on October 15, 1989. The return was not signed until October 31, 1989. It was stamped received by respondent; however, the stamp is illegible. The stamp reads either "11-06-89" or "12-06-89". Petitioners introduced no evidence on this issue. Therefore, we hold for respondent that the return was not timely filed. We will give petitioners the benefit of the doubt as to the actual date of filing, and hold that the return *426 is to be treated as received as of November 6, 1989. Decision will be entered under Rule 155. Footnotes
1. Petitioners did attach to their brief an amended return for 1987 dated Jan. 27, 1995. We did not consider any information that the return may contain for it was not introduced into evidence at trial. Rule 143(b).↩